JOHN R. **CAMPO,** ESQ., **SBN** 157137
**BRANSON, BRINKOP, GRIFFITH** & STRONG, **LLP**
643 Bair Island Road, Suite 400
Redwood City, CA 94063
Telephone:    (650) 365-7710
Facsimile:    (650) 365-7981

Attorneys for Defendant
**BAYPORT** MARINA **PLAZA** LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

PATRICK CONNALLY, an individual; and
DISABILITY RIGHTS ENFORCEMENT,
EDUCATION, SERVICES: HELPING YOU
HELP OTHERS, a California public benefit
corporation,

                Plaintiffs,

BAYPORT MARINA PLAZA LLC, a limited
liability company,

                Defendant.

Case No. C-07-3032-BZ

**REQUEST FOR JUDICIAL NOTICE IN
SUPPORT OF MOTION TO DISMISS
SECOND, THIRD AND FOURTH CAUSES
OF ACTION PURSUANT TO FRCP
12(b)(1)**

**Date:**       **October 17, 2007**
**Time:**       **10:00 a.m.**
**Courtroom:**  **G**
**Judge:**     **Bernard Zimmerman**

**[Complaint filed June 12, 2007]**

      Defendant BAYPORT MARINA PLAZA LLC, by and through its attorneys, hereby

requests the Court to take judicial notice, pursuant to Federal Rule of Evidence 201, of the

following facts:

      1.     Attached hereto as Exhibit "A" is a true and correct copy of the Court Order in

*Molski v. Hitching Post I Restaurant, Inc., CV* 04-1077 SVW (RNBx) (C.D. Cal. entered May

25, 2005).

      2.     Attached hereto as Exhibit "B" is a true and correct copy of the Court Order in

*Moiski v. EOS Winery,*  CV03-5880 GAF (C.D. Cal. entered July 15, 2005).

1

3.  Attached hereto as Exhibit "C" is a true and correct copy of the Court order in *Jankey v. Beach Hut,* No. *CV* 05-3856 SVW (JTLx) (C.D. Cal. entered December 7, 2005).

Dated: August 27, 2007                    Respectfully submitted,

                                          BRANSON, BRINKOP, GRIFFITH & STRONG

                                          By: _____
                                              JOHN R. CAMPO
                                              Attorneys for Above-Named Defendant

BRANSON BRINKOP GRIFFITH & STRONG LLP
643 BAIR ISLAND ROAD, SUITE 400
REDWOOD CITY, CALIFORNIA 94063
TELEPHONE (650) 365-7710

REQUEST FOR JUDICIAL NOTIC IN SUPPORT OF MOTION TO DISMISS SECOND, THIRD AND FOURTH CAUSES OF ACTION
PURSUANT TO FRCP 12(b)(1) - C-07-3032-BZ

# EXHIBIT A

Westla .

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 3952248 (C.D.Cal.)
(Cite **as: Not Reported in F.Supp.2d)**

Page 1

C
Molski v. Hitching Post I Restaurant, Inc.
C.D.Cal.,2005.
Only the Westlaw citation is currently available.
United States District Court,C.D. California.
Jarek MOLSKI, an individual; **Disability Rights Enforcement, Education** Services: Helping You Help Others, a California public benefit corporation, Plaintiffs,
v.
HITCHING POST I RESTAURANT, INC., a California corporation, Defendant.
**No. CV 04-1077SVWRNBX.**

May 25, 2005.

Thomas E. Frankovich, Thomas E. Frankovich Law Offices, San Francisco, CA, for Plaintiffs.
Terrence J. Bonham, Benton, Orr, Duval & Buckingham, Ventura, CA, for Defendant.

ORDER DECLINING SUPPLEMENTAL JURISDICTION
WILSON, J.

I. INTRODUCTION & FACTUAL BACKGROUND

*1 The Hitching Post I Restaurant ("Hitching Post") is located in the four-block rustic town of Casmalia, California in a building built in the 1890s. Casmalia is located about 16 miles off of Highway 101 near Santa Maria, California. On March 8, 2003, Jarek Molski ("Molski"), a paraplegic, visited several wineries in the area with his grandmother, Stefania Kopera. That night, Molski "drove down through the middle of nowhere trying to find [the Hitching Post]." (Complaint ¶ 21.) When Molski finally came across the Hitching Post, he discovered that there was no parking lot but only parking spaces on the east and south sides. The east side had a parking stall with a "ISA" symbol but no access aisle. As a result, Molski parked more. parallel than diagonal to allow him to exit and re-enter his vehicle.

After exiting his vehicle, Molski attempted to wheel up the ramp on the primary entrance on the east side. According to Molski, the ramp was too steep and he had to strain to wheel himself up, causing injuries to his extremities.

Once inside, Molski had to wait an hour for a table. To pass the time, he ordered a bottle of wine. However, he could not consume it because the bar counter was too high. In addition, Molski could not use the table in the bar area because it lacked sufficient horizontal clearance.

After several glasses of wine, Molski needed to use the bathroom to empty. his urine bag. He attempted to use the men's room but the doorway was too narrow. Although the women's room was wheelchair accessible, Molski was too embarrassed to use it. So he got back into his car and drove to a remote section of the road to relieve himself. ᶠᴺ¹

> FN1. In his deposition testimony, Molski claimed that he went outside to empty his urine bag and then moved his car two feet to avoid the stream of urine.

Molski and his mother were finally seated and had dinner. Subsequent to the events of that evening, Molski learned that the Hitching Post was accessible through a door on the south side of the building.

On February 17, 2004, Molski and the Disability Rights Enforcement Education Services ("DREES") filed suit against the Hitching Post for alleged violations of the Americans with Disabilities Act ("ADA"), the Unruh Civil Rights Act ("Unruh Act"), the Disabled Persons Act ("DPA"), California Health and Safety Code § 19955, and California Business and Professions Code § 17200. Molski seeks the following relief: 1) injunctive relief pursuant to the ADA, 2) damages of $4,000 per day pursuant.to the Unruh Act and California Health and Safety Code § 19955, until such time as the Hitching Post is made fully accessible to the disabled, 3) general and compensatory damages pursuant to the Unruh Act, the DPA, and California Health and Safety Code § 19955, and 4) punitive damages pursuant to California Civil Code § 3294.

> FN2. The Hitching Post was not the only business Molski visited on March 8, 2003 and subsequently sued. He also sued the following three (3) wineries: (1) Zaca Mesa Winery, Los Olivos, California (United States District Court, Central District of

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 3952248 (C.D.Cal.)
**(Cite as: Not Reported in F.Supp.2d)**

California, Case No. CV04-1395(RSWL)); (2) Cambria Winery and Vineyard, Santa Maria, California (United States District Court, Central District of California Case No. CV04-1362(GHK)), and (3) Rancho Sisquoc, Santa Maria, California (United States District Court, Central District of California, Case No. CV04-1360(RSWL)). Nor was the Hitching Post the only business against which Molski filed suit on February 17, 2004. That same day, Molski filed five (5) other suits. The other suits were: (1) *Molski v. Lafond Winery,* CV04-1044(WMB); *(2) Molski v. Somethings Fishy,* CV04-1047(PA); *(3) Molski v. Hitching Post II, CV* 04-1071(PA); (4) *Molski v. Conrads Restaurant Glendale,* CV04-1075(ABC); and *(5) Molski v. Mosby Winery,* CV04-1976(NM). In total, Molski has filed 335 suits in the Central District since 2001, 14 of which were initially assigned to this Court. As one court has noted, Molski's complaints invariably combine an ADA claim with claims under the Unruh Act, the DPA, and the Cal. Health & Safety Code. <u>*Molski v. Mandarin Touch Rest.,* 359 F.Supp.2d 924, 926 (C.D.Cal.2005).</u> Indeed, the court in that case found that *all 223* of the complaints it examined combined the same five causes of action: a federal ADA claim, an Unruh Act claim, a DPA claim, a claim under Cal. <u>Health & Safety Code § 19955,</u> and a claim under <u>Cal. Bus. & Prof.Code. § 17200.</u> *Id.* This is the precise combination of claims present here. In fact, aside from the occasional omission of a claim under Cal. <u>Bus. & Prof.Code § 17200,</u> the exact same combination of claims has appeared in all of Molski's complaints before this Court.

On June 27, 2004, four months after filing suit, Molski visited the Hitching Post a second time with his girlfriend. At this time, Molski visited the Unisex "accessible" restroom to empty his urine bag. He claims that he was embarrassed because the bathroom was designed for both the disabled and women. In addition, he claims that the vanity counter and the paper towel dispenser were too high. He also claims that the pipes under the vanity counter were not properly insulated.

*2 At his deposition, Molski testified that he does not have any acquaintances around Casmalia, including the Santa Maria area. The Hitching Post is 151 miles

from his home in Woodland Hills, California.

Molski sought no medical treatment for the alleged strain to his extremities. Nor is he claiming any lost wages or property damage.

On October 27, 2004, five days prior to the November 1, 2004 Pre-Trial Conference, Molski filed a Supplemental Memorandum of Contentions of Fact and Law in which he abandoned "all claims for compensatory and/or actual damages, leaving only claims for statutory damages, injunctive relief, and attorney's fees, costs and litigation expenses."

At the Pre-Trial Conference on November 1, 2004, counsel for the Hitching Post advised the Court that it was waiving its right to a jury trial. Molski originally requested a jury trial but withdrew his request at the November 22, 2004 hearing.

## II. DISCUSSION

The issue before the Court is whether it should exercise its discretion under <u>28 U.S.C. § 1367(c)</u> to decline supplemental jurisdiction over Molski's state law claims. [FN3] The Hitching Post argues that the Court should decline supplemental jurisdiction because 1) Molski's state law claims raise complex and novel issues of state law, 2) substantially predominate over his ADA claim, and 3) other compelling reasons (e.g., the risk of jury confusion) exist. In response, Molski contends that his state law claims are incidental to his ADA claims and are not novel or complex.

> FN3. The federal courts have non-exclusive federal jurisdiction over actions arising under the ADA. § 12117 (providing that 42 <u>U.S.C. § 2000e-5(f)(3)</u> applies to ADA claims). Although violations of the ADA constitute violations of the Unruh Act and the DPA, *see* <u>Cal. Civ.Code § § 51(f), 54.1(d),</u> the Ninth Circuit has held that the mere fact that a violation of a federal law can serve as an element of a state law claim is insufficient to confer federal-question jurisdiction over the state law claim. <u>*Wander v. Kaus,* 304 F.3d 856 (9th Cir.2002);</u> *see also* <u>*Pickern v. Best W. Timber Cove Lodge Marina Resort,* 194 F.Supp.2d 1128 (E.D.Cal.2002).</u> Thus, this Court has no independent basis for exercising jurisdiction over Molski's state law claims.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 3952248 (C.D.Cal.)
(Cite as: Not Reported in F.Supp.2d)

Page 3

28 U.S.C. § 1367 governs a federal court's exercise of supplemental jurisdiction. Section 1367(a) provides that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. 5 1367(a). Under 5 1367(c), however, a district court has the discretion to decline to exercise supplemental jurisdiction over a state claim if

(1) the claim raises a novel' or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

1367(c)(1)-(4). As interpreted by the Ninth Circuit, § 1367 mandates the exercise of supplemental jurisdiction pursuant to § 1367(a) unless such exercise is prohibited by § 1367(b) or one of the specifically enumerated exceptions set forth in § 1367(c) applies. *Executive Software N. Am., Inc. v. U.S.Dist. Court for the Cent. Dist. of Cal.*, 24 F.3d 1545, 1555-56 (9th Cir.1994). Thus, "unless a court properly invokes a § 1367(c) category in exercising its discretion to decline to entertain pendent claims, supplemental jurisdiction must be asserted." *Id.*at 1556.

*3 The Hitching Post argues that three of the exceptions set forth in 5 1367(c) apply here.[FN4] First, the Hitching Post argues that Molski's claims under the Unruh Act and the DPA raise novel or complex unsettled issues of state law. Second, the Hitching Post argues that Molski's state law claims for damages "substantially predominate" over his ADA claim for injunctive relief. Third, the Hitching Post argues that there are "other compelling reasons" for declining to exercise supplemental jurisdiction.

FN4. While supplemental jurisdiction is routinely declined where the ADA claim is eliminated before trial, *see, e.g., Pickern v. Best W. Timber Cove Lodge Marina Resort*, 194 P. Supp.2d 1128, 1133 (E.D.Cal.2002), *Pickern v. Stanton's Restaurant & Woodsman Room*, 2002 WL 143817, at *3

(N.D.Cal. Jan.29, 2002), that option is presently not available here.

*A. Novel or Complex Unsettled Issues of State Law*

The Hitching Post argues that Molski's claims under the Unruh Act and the DPA raise novel or complex unsettled issues of state law. First, the Hitching Post argues that the plaintiffs burden of proof under the Unruh Act and the DPA is beyond what is required under the ADA. According to the Hitching Post, these differing burdens of proof will confuse the jury. Second, the Hitching Post argues that the DPA requires proof of actual harm or damages. Third, the Hitching Post argues that the accessibility standards set forth under the ADA and California law are inconsistent. Fourth, the Hitching Post argues that the remedial provisions of the Unruh Act and the DPA are in conflict and are confusing. In response, Molski argues that (1) the burden of proof with respect to ADA claims and claims under the Unruh Act and the DPA are identical since liability under the Unruh Act and the DPA can be predicated on liability under the ADA, (2) the DPA does not require proof of actual harm or damages, (3) the different accessibility standards under state and federal law are minimal and in any event Molski is seeking to apply only one set of standards, and (4) the remedial provisions of the Unruh Act and the DPA do not conflict and are easily interpreted.

To determine the validity of these arguments, it is necessary to review the ADA, the Unruh Act, and the DPA.

*1. The ADA*

Molski's ADA claim arises under Title III. Title III prohibits discrimination "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. 5 12182(a). A "restaurant, bar, or other establishment serving food or drink" is included within the definition of a "public accommodation" under Title III. § 12181(7)(B).

In order to establish a prima facie case of disability discrimination under Title III of the ADA, 'a plaintiff must prove that (1) she has a disability, (2) the defendant's business is a place of public accommodation, and (3) she was denied full and

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 3952248 (C.D.Cal.)
(Cite as: Not **Reported in F.Supp.2d**)

Page 4

equal treatment because of her disability. *Emerick v. Kahala L & L, Inc., 2000* WL 687662, at *21 (D.Haw. May 16, 2000); *Alford v. City of Cannon Beach,* 2000 WL 33200554, at *4 (D.Or. Jan.17, 2000)

The ADA applies to existing buildings, newly constructed buildings, and altered buildings. *See §§ 12182(b)(2)(A)(iv), 12183.* For existing buildings FFN5 that have not been altered, liability arises when (1) the existing building contains an architectural barrier prohibited under the ADA and (2) the removal of the barrier is readily achievable. *§ 12182(b)(2)(A)(iv)* ("[D]iscrimination includes ... a failure to remove architectural barriers ... in existing facilities ... where such removal is readily achievable."); *see also D'Lil v. Stardust Vacation Club,* 2001 WL 1825832, at *4 (E.D.Cal. Dec.21, 2001) ("To state a prima facie case under Title III of the ADA based on the presence of architectural barriers in an existing facility, a plaintiff must demonstrate that: (1) the facility presents a barrier prohibited under the ADA, and (2) removal of the barrier is readily achievable."). The term "readily achievable" is defined as "easily accomplishable and able to be carried out without much difficulty or expense." § 12181(9).[FN6] Even if the defendant can demonstrate that the removal of the barrier is not readily achievable, she can be held liable for the "failure to make such goods, services, facilities, privileges, advantages, or accommodations available through alternative methods if such methods are readily achievable." *§ 12182(b)(2)(A)(v).*

> FN5. An existing building is one that was constructed before January 26, 1993. *Access Now, Inc. v. S. Fla. Stadium Corp.,* 161 F.Supp.2d 1357, 1362 (S.D.Fla.2001).

> FN6. Section 12181(9) sets forth the factors to be considered in determining whether an action is readily achievable. § 12181(9)(A)-(D).

*4 Under the ADA, the Attorney General is required to issue regulations setting forth the standards applicable to facilities covered by *§ 12182.* § 12186(b). "The Department of Justice (`DOJ') adopted as part of its standards with regard to Title III a set of ADA Accessible Guidelines for Buildings and Facilities ('ADAAG')." *Emerick,* 2000 WL 687662, at *22. The DOJ has renamed the ADAAG guidelines "standards for accessible design," and it is these standards, codified at 28 C.F.R. Part 36, App. A, that constitute the legally binding regulations.

*Indep. Living Res. v. Or. Arena Corp., 1* F.Supp.2d 1124, 1130 n. 2 (D.Or.1998).

The only remedy available to a private litigant under Title III is injunctive relief. § 12188(a)(1).F-'" *See also Wander v. Kaus,* 304 F.3d 856, 858 (9th Cir.2002) ("Damages are not recoverable under Title III of the ADA-only injunctive relief is available for violations of Title III. "); *Fischer v. SJB-P.D. Inc.,* 214 F.3d 1115, 1120 (9th Cir.2000) ("Monetary relief is not an option for private individuals under Title III of the ADA.").

> FN7. Section 12188(a)(1) provides that the remedies available under Title III are those set forth in 42 U.S.C. § 2000a-3(a). ,§ 12188(a)(1). Section 2000a-3(a) provides: Whenever any person has engaged or there are reasonable grounds to believe that any person is about to engage in any act or practice prohibited by section 2000a-2 of this title, a civil action for preventative relief, including an application for a permanent or temporary injunction, restraining order, or other order, may be instituted by the person aggrieved.... § 2000a-3. The Supreme Court has held that a plaintiff suing under § 2000a-3(a) cannot recover damages. *Newman v. Piggie Park Enters.,* 390 U.S. 400, 401-02, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968).

## 2. The Unruh Act

The Unruh Act provides that "[a]ll persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, or medical condition are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Cal. Civ.Code § 51(b). In 1992 the Unruh Act was amended to provide that "[a] violation of the right of any individual under the Americans with Disabilities (Public Law 101-336) shall also constitute a violation of this section." Cal. Civ.Code § 51(f).

Although California courts have held that the Unruh Act is to be construed liberally, *see, e.g., Lazar v. Hertz Corp.,* 69 Cal.App.4th 1494, 1502, 82 Cal.Rptr.2d 368 (1999); *Winchell v. English,* 62 Cal.App.3d 125, 128, 133 Cal.Rptr. 20 (1965), the California Supreme Court has held that the Unruh Act prohibits only intentional discrimination. *Harris*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 5
Not Reported in F.Supp.2d, 2005 WL 3952248 (C.D.Cal.)
**(Cite as: Not Reported in F.Supp.2d)**

*v., Capital Growth Investors XIV,* 52 Cal.3d 1142, 1175, 278 Cal.Rptr. 614, 805 P.2d 873 (1991) ( "[W]e hold that a plaintiff seeking to establish a case under the Unruh Act must plead and prove intentional discrimination in public accommodations in violation of the terms of the Act. A disparate impact analysis or test does not apply to Unruh Act claims."). However, *Harris* was decided prior to the 1992 amendment that added § 51(f). Thus, the question arose as to whether, as a result of the 1992 amendment, a showing of intentional discrimination was required in cases where the plaintiff predicated his Unruh Act claim on a showing that the defendant violated the ADA. In a recently decided case, the Ninth Circuit held that "no showing of intentional discrimination is required where the Unruh Act violation is premised on an ADA violation." *Lentini v., Cal. Ctr. for the Arts, Escondido,* 370 F.3d 837, 847 (9th Cir.2004).

**\*5** The Unruh Act authorizes an award of statutory damages in an amount three times the amount of actual damages but in no case less than four thousand dollars ($4,000) "for each and every offense." Cal. Civ.Code § 52(a). The California Supreme Court has held that California Civil Code § 52 authorizes an award of the minimum statutory damages amount regardless of the plaintiff's actual damages. *Koire v. Metro Car Wash,* 40 Cal.3d 24, 33, 219 Cal.Rptr. 133, 707 P.2d 195 (1985). The Ninth Circuit has also reached this conclusion. *Botosan v. Paul McNally Realty,* 216 F.3d 827 (9th Cir.2000) (holding that proof of actual damages is not a prerequisite to recovery of statutory minimum damages under California Civil Code § 52).

### 3. The DPA

The DPA provides that "[i]ndividuals with disabilities or medical conditions have the same right as the general public to the full and free use of the streets, highways, sidewalks, walkways, public buildings, medical facilities, including hospitals, clinics, and physician's offices, public facilities, and other public places." Cal. Civ.Code § 54(a). It further provides that "[i]ndividuals with disabilities shall be entitled to full and equal access ... to accommodations, advantages, facilities ... places of public accommodation, amusement, or resort, and other places to which the general public is invited...." Cal. Civ.Code 5 54.1(a)(1). Like the Unruh Act, the DPA provides that "[a] violation of the right of an individual under the Americans with Disabilities Act of 1990 (Public Law 101-336) also constitutes a

violation of this section." Cal. Civ.Code § 54(c); *see also* Cal. Civ.Code § 54.1(d) ("A violation of the right of an individual under the Americans with Disabilities Act of 1990 (Public Law 101-336) also constitutes a violation of this section, and nothing in this section shall be construed to limit the access of any person in violation of that act.").

As interpreted by California courts, the purpose of the DPA is "to reduce or eliminate the physical impediments or participation in community life by the physically handicapped." *Donald v. Café Royale, Inc.,* 218 Cal.App.3d 168, 177, 266 Cal.Rptr. 804 (1990). To effectuate this purpose, California courts have held that the DPA does not require a showing of intent in order to obtain damages. *Id.* at 177-80, 266 Cal.Rptr. 804.

The DPA authorizes an award of damages in an amount three times the amount of actual damages but in no case less than one thousand dollars ($1,000) "for each offense." Cal. Civ.Code § 54.1. A plaintiff need not show actual damages in order to recover the minimum amount. *Donald,* 218 Cal.App.3d at 180-81, 266 Cal.Rptr. 804. However, a plaintiff must establish that she was denied equal access on the particular occasion in order to recover. *Id.* at 183, 266 Cal.Rptr. 804. Finally, the DPA prevents a plaintiff from recovering under both the DPA and the Unruh Act. California Civil Code § 54.3(c) provides that "[a] person may not be held liable for damages pursuant to both this section and Section 52 for the same act or failure to act." Cal. Civ.Code § 54.3(c).

### 4. California Health & Safety Code § § 19955 et seq.

**\*6** California Health & Safe Code § 19956 mandates that all public accommodations constructed in California comply with the requirements of Government Code § 4450 et seq. Cal. Health & Safety Code § 19956; *see also People ex rel. Deukmejian v. Che Inc.,* 150 Cal.App.3d 123, 132, 197 Cal.Rptr. 484 (1984); *Schonfeld v. City of Carlsbad,* 978 F.Supp. 1329, 1331 n. 2 (S.D.Cal.1997). The purpose of § 19956 is "to insure that public `accommodations or private facilities constructed in this state with private funds adhere to the provisions [of Government Code § § 4450 et seq.]." Cal. Health & Safety Code § 19955. However, § 19956 applies to existing public accommodations constructed before July 1, 1970 only "when any alterations, structural repairs, or additions are made...." Cal. Health & Safety Code § 19959. Moreover, even when alterations, structural

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

repairs, or additions are made, § 19956 applies only to the "area of specific alteration, structural repair or addition and shall not be construed to mean that the entire building or facility. is subject to this chapter." *Id.* The access guidelines with which public accommodations must comply are set forth in Title 24 of the California Code of Regulations. *D'Lil,*2001 WL 1825832, at *7.

A plaintiff may not recover damages pursuant to . 19956. *Donald,*218 Cal.App.3d at 182-83, 266 Cal.Rptr. 804; *see also Doran v. Embassy Suites Hotel,*2002 WL 1968166, at *6 (N.D.Cal. Aug.26, 2002).

### 5. Analysis

Neither the ADA nor the DPA requires a showing of intentional discrimination. Ordinarily, the Unruh Act does. In *Lentini,* however, the Ninth Circuit held that a plaintiff need not prove intentional discrimination in order to establish a violation of the Unruh Act if the plaintiffs Unruh Act claim is premised on a violation of the ADA. The Hitching Post notes that *Lentini* is merely the Ninth Circuit's interpretation of the Unruh Act and that the issue has not been resolved by the California state courts. This is true, but this Court is bound by the Ninth Circuit's decision in *Lentini.* Thus, the applicable burden of proof under the Unruh Act for claims premised on the ADA is a *settled* issue of law in federal court.[FN8]

> FN8. The Hitching Post attempts to argue that supplemental jurisdiction cannot be based on the fact that the Unruh Act and the DPA share elements of the ADA because that would be tantamount to allowing states to create federal jurisdiction simply by enacting statutes in which a federal cause of action serves as an element. However, the cases cited by the Hitching Post stand only for the proposition that *federal question* jurisdiction cannot be based on a state law claim that uses a federal law as one of its elements. *See, e.g., Wander v. Kaus,*304 F.3d 856, 859 (9th Cir.2002) (holding that a plaintiff may not establish federal question jurisdiction on the basis of the DPA even though liability under the DPA can be establish by proof of the defendant's violation of the ADA); *Picker': v. Best W. Timber Cove Lodge Marina Resort,* 194 F.Supp.2d 1128, 1130-33 (E.D.Cal.2002)

(same); *Pickern v. Stanton's Rest. & Woodsman Room,*2002 WL 143817, at *2-3 (N.D.Cal.2002) (same). None of these cases stand for the proposition that *supplemental jurisdiction* may be declined where the state law claims are premised, in whole or in part, on federal claims.

Neither the Unruh Act nor the DPA require proof of actual damages in order to recover the minimum statutory damages amount. *Koire,*40 Cal.3d at 33, 219 Cal.Rptr. 133, 707 P.2d 195; *Donald,*218 Cal.App.3d at 180-81, 266 Cal.Rptr. 804. Thus, since Molski is seeking only the minimum statutory damages amount, there is no requirement that he prove actual damages. Nor, for that matter, may Molski recover statutory damages pursuant to both the Unruh Act and the DPA. Cal. Civ.Code § 54.3(c). Thus, the Hitching Post's concerns about the possibility of double recovery are unfounded.

The Hitching Post's concerns about the tensions between the accessibility standards set forth under federal law in the ADAAG and under state law in Title 24 are not without foundation, but they are not warranted here since Molski has stipulated to the application of one set of standards.

*7 Finally, while the remedial provisions of the Unruh Act and the DPA do not conflict, they are ill-defined. Since the DPA precludes a plaintiff from recovering under both the Unruh Act and the DPA, there is no conflict between the remedial provisions of the two acts. Nevertheless, the phrases "for each and every offense" and "for each offense" are ambiguous. Indeed, two district courts which have grappled with this very language have come to opposing conclusions. *Compare' Botsonan v. Fitzhugh,* 13 F.Supp.2d 1047 (S.D.Cal.1998) (permitting recovery of daily damages) *with Doran v. Embassy Suites Hotel,*2002 WL 1968166, at *4-6 (N.D.Cal. Aug.26, 2002) (finding that daily damages are not permitted). Moreover, there is no California case directly on point.

Because there is an absence of controlling California case law, and because the two federal courts which have addressed the issue have come to opposing conclusions, the Court finds that the . damages provisions of the Unruh Act and DPA raise complex issues of unsettled state law which are better left to the California courts to resolve.

### B. State Law Claims "Substantially Predominate"

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 3952248 (C.D.Cal.)
**(Cite as: Not Reported in F.Supp.2d)**

*Over Federal Law Claims*

The Hitching Post argues that Molski's state law claims for damages "substantially predominate" over his ADA claim for injunctive relief. The Hitching Post bases this argument on several factors. First, the Hitching Post notes that an award of statutory damages in the amount of $4,000 per violation will total $52,000 if the Hitching Post is found to have committed the thirteen (13) violations alleged by Molski. Second, the Hitching Post argues that trying the state claims will, as a practical matter, consume more of the Court's time than trying the federal claim.

In *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), the Supreme Court indicated that state law issues may substantially predominate "in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought...." While *Gibbs* is a pre-28 U.S.C. § 1367 case, the Ninth Circuit has indicated that the 1367(c) inquiry should be informed by *Gibbs. Acri v. Varian Assocs., Inc.,* 114 F.3d 999, 1001 Cir.1997).

Judged in terms of the *Gibbs* criteria, Molski's state law claims substantially predominate over his ADA claims. Although the burdens of proof and standards of liability under the ADA and the Unruh are identical where the plaintiff predicates his Unruh Act claim on an ADA violation, the statutory damages available to the plaintiff under the Unruh Act substantially predominate over the relief available under the ADA. Under Molski's interpretation of the Unruh Act, Molski can recover a minimum of $4,000 per violation. If he proves the 13 violations he alleges, this will result in an award of $52,000. By contrast, Molski is entitled to only injunctive relief and attorneys' fees under the ADA. Given this disproportion, the Court concludes that Molski's state claims substantially predominate over his federal ones. *Cf. Rivera Flores v. P.R. Tel. Co.,* 776 F.Supp. 61, 71-72 (D.P.R.1991) (declining to exercise supplemental jurisdiction over plaintiffs non-federal claims because, among other things, the plaintiff was seeking six million dollars in damages for the tort of intentional infliction of emotional distress but only injunctive relief and backpay under the Rehabilitation Act). Moreover, the Court finds that interpreting the phrases "for each and every offense" and "for each offense" in the Unruh Act and the DPA would likely consume far more of the Court's time and resources than a trial on the merits of Molski's ADA claim alone. For this reason, too, Molski's state claims substantially predominate over his ADA claim.

### C. Other Compelling Reasons

**\*8** The Hitching Post argues that "other compelling reasons" exist for declining supplemental jurisdiction. First, the Hitching Post argues that the conflicting standards under the ADA and the state claims will cause jury confusion. [FN9] Second, the Hitching Post argues that Molski has a litigation strategy of hitching his state claims to ADA claims in order to avoid having state courts interpret the state laws which are at the heart of his lawsuits.

> FN9. Since Molski has waived his right to a jury trial, jury confusion is no longer a ground upon which this Court may decline supplemental jurisdiction.

> FN10. The Hitching Post argues that Molski's state claims are at the heart of his lawsuits because they allow for an award of monetary damages while the ADA does not.

As noted above, the Ninth Circuit has indicated that the 1367(c) inquiry should be "informed by the *Gibbs* values of economy, convenience, fairness, and comity." *Acri,* 114 F.3d at 1001. Thus, these are among the "other compelling reasons" for which a court can decline to exercise supplemental jurisdiction.

In this case, the Hitching Post argues that two values-discouraging forum-shopping and comity-constitute compelling reasons for declining to exercise supplemental jurisdiction. The Hitching Post argues that Molski's pattern of using the federal courts to adjudicate his state law claims constitutes an illegitimate form of forum shopping and undermines California's ability to interpret its own laws. These arguments have considerable force. There can be no doubt that comity is a cardinal principle in our federal system. *See, e.g., Younger v. Harris,* 401 U.S. 37, 43-54 (1971). Nor can there be any doubt that discouraging forum-shopping is a legitimate goal. *See, e.g., Hanna v. Plumer,* 380 U.S. 460, 467-68, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965); *Gov't Employees Ins. Co. v. Dizol,* 133 F.3d 1220, 1225 n. 5 (9th Cir.1998). While it is true that a plaintiffs "choice to proceed with a federal claim in federal court is not forum shopping, but the exercise of a congressionally recognized federal right," *Hamilton v. Roth,* 624 F.2d 1204, 1214 n. 8 (3d Cir.1980) (Rosenn, J., concurring in part, dissenting in part), serious questions of forum

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 3952248 (C.D.Cal.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 8

shopping necessarily arise "[t]o the extent that the federal claim is used as a bootstrap, merely to facilitate the choice of a federal forum for the pendent state claim." *Id.*at 1214. Moreover, when a plaintiff systematically appends supplemental state claims to a federal claim in order to have the state claims adjudicated by a federal court, a court must weigh heavily considerations of comity before proceeding to adjudicate the state claim. These considerations weigh even more heavily when the laws at issue have not been definitively interpreted by the state courts. *Cf Kazor v. Gen. Motors Corp.,*585 F.Supp. 621, 623 (E.D.Mich.1984) (fmding that remand was warranted where no federal claims remained because remand is "particularly helpful in procuring a more definitive reading of state law where, as here, there is not a substantial amount of [state] authority interpreting the applicable provisions of state statute"). In such circumstances, there are compelling reasons for declining jurisdiction. As the Court in *Gibbs* recognized, "Needless decisions of state law should be avoided both as a matter of comity and *to promote justice between the parties, by procuring for them a surer footed reading of applicable law." Gibbs,*383 U.S. at 726 (emphasis added).

**\*9** Because the California courts should be given an opportunity to interpret California's disability laws, because the calculated effort to avoid having California courts decide issues of California law is to be discouraged, and because the parties themselves are entitled to a surer-footed interpretation of California's disability laws, the Court finds that compelling reasons exist to decline supplemental jurisdiction over Molski's state law claims.

### III. CONCLUSION

Because Molski's state law claims present complex issues of unsettled state law, because Molski's state law claims substantially predominate over his federal claims, and because there are other compelling reasons for declining supplemental jurisdiction, the Court declines to exercise supplemental jurisdiction over Molski's state law claims.

IT IS SO ORDERED.

C.D.Cal.,2005.
Molski v. Hitching Post I Restaurant, Inc.
Not Reported in F.Supp.2d, 2005 WL 3952248 (C.D.Cal.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT B

Westlaw

Not Reported in F.Supp.2d                                                                    Page 1
Not Reported in F.Supp.2d, 2005 WL 3952249 (C.D.Cal.)
(Cite as: **Not Reported in F.Supp.2d)**

C
Molski v. EOS Estate Winery
C.D.Cal.,2005.
Only the Westlaw citation is currently available.
United States District Court,C.D. California.
Jarek MOLSKI, et al., Plaintiffs,
v.
EOS ESTATE WINERY, et al. Defendants.
**No. CV 03-5880-GAF.**

July 14, 2005.

Thomas E. Frankovich, Thomas E. Frankovich Law
Offices, San Francisco, CA, for Plaintiffs.
John David Cantor, Jon David Cantor Law Offices,
Calabasas, CA, for Defendants.

ORDER DISMISSING SUPPLEMENTAL CLAIMS
FEESS, J.

*A. Introduction*

*1 Having conducted the pre-trial conference in this
case, and having conferred with counsel regarding
the scope of the Court's jurisdiction in this matter,
and having considered the arguments and authorities
set forth in the parties' trial briefs and memoranda,
the Court concludes that the supplemental state law
claims raise novel and complex issues of state law
and substantially predominate over the federal claim
under 28 U.S.C. § 1367(c)(l) & (2). Further,
Plaintiffs record as a vexatious litigant in this Court
counsels in favor of the Court's exercise of discretion
to dismiss the supplemental claims under Section
1367(c)(4). ¹ Accordingly, as discussed more fully
below, the supplemental state law claims are hereby
ORDERED DISMISSED.

FN1. The Court notes that Molski has a
history of filing hundreds of suits involving
the same five claims. As stated by Central
District Judge Edward Rafeedie, "223
separate claims are almost identical. Each of
the 223 complaints allege the same five
causes of action: a federal ADA claim, and
the same four claims under California state
law." *Molski v. Mandarin Touch Rest.,* 359
F.Supp.2d 924, 926 (C.D.Cal.2005). *See
also Molski v. Hitching Post Rest. 1,* Central

District Judge Stephen Wilson's Order
Declining Supplemental Jurisdiction, CV
04-1077-SVW (RNBx), May 25, 2005
("Wilson Order").

FN2. Defendants also contend that the case
should be dismissed under collateral
estoppel principles. That argument is so
lacking in merit that it deserves no mention
beyond the fact that the Court rejects it out
of hand.

*B. Discussion*

Under 28 U.S.C. § 1367, if the district court has
original jurisdiction over a claim, it also "shall have
supplemental jurisdiction over all other claims that
are so related to claims in the action within such
original jurisdiction that they form part of the same
case or controversy under Article III of the United
States Constitution." 28 U.S.C. § 1367(a). The Ninth
Circuit mandates the exercise of supplemental
jurisdiction unless it is prohibited by § 1367(b), or
unless one of the exceptions in § 1367(c) applies.
*Executive Software N. Am., Inc. v. U.S. Dist. Court
for the Cent. Dist. of Cal.,* 24 F.3d 1545, 1555-56
(9th Cir.1994). A court may utilize its discretion to
decline to exercise supplemental jurisdiction over a
state claim if
1) the claim raises a novel or complex issue of State
law;
2) the claim substantially predominates over the
claim or claims over which the district court has
original jurisdiction;
3) the district court has dismissed all claims over
which it has original jurisdiction; or
4) in exceptional circumstances, there are other
compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c)(1)-(4). Since § 1367(b) does
not apply to Molski's case, the Court analyzes only
whether an exception to supplemental jurisdiction
exists under § 1367(c).

*1. The Federal Claim*

Plaintiff presents a single federal claim-an alleged
violation of Title III of the Americans With
Disabilities Act. See 42 U.S.C. § 12182. The
relevant statutory provisions prohibit those who

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 3952249 (C.D.Cal.)
(Cite as: **Not Reported in F.Supp.2d**)

Page 2

operate public accommodations from discriminating on the "basis of disability in the full and equal enjoyment of goods, services, [and] facilities...." 42 U.S.C. § 12182(a). Under Title III, private litigants may seek injunctive relief, 42 U.S.C. § 12188(a)(1), but "[d]amages are not recoverable." *Wander v. Kaus*, 304 F.3d 856, 858 (9ᵗʰ Cir.2002); see also *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1120 (9ᵗʰ Cir.2000).

### 2. The State Claims

#### a. The Unruh Act

The Unruh Act provides that "[a]ll persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, relief, ancestry, national origin, disability, or medical condition are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Cal. Civ.Code § 51(b). In 1992, the Unruh Act was amended to provide that "a violation of the right of any individual under the Americans with Disabilities Act of 1990 (Public Law 101-336) shall also constitute a violation of this section." Cal. Civ.Code § 51(f).

*2 The California Supreme Court held that the Unruh Act prohibits only intentional discrimination. *Harris v. Capital Growth Investors XIV*, 52 Cal.3d 1142, 1175, 278 Cal.Rptr. 614, 805 P.2d 873 (1991) ("[W]e hold that a plaintiff seeking to establish a case under the Unruh Act must plead and prove intentional discrimination in public accommodations in violation of the terms of the Act. A disparate impact analysis or test does not apply to the Unruh Act claims."). However, since *Harris* was decided prior to the 1992 addition of section 51(f), it became unclear whether a showing of intentional discrimination was required in cases where a plaintiff claimed a violation of the ADA to establish his Unruh claim. The Ninth Circuit recently held that a showing of intentional discrimination is not required under this circumstance. *Lentini v. Cal. Ctr. for the Arts, Escondido*, 370 F.3d 837, 847 (9th Cir.2004).

The Unruh Act allows the plaintiff to recover statutory damages in the amount of three times the total actual damages, but no less than four thousand dollars ($4000) "for each and every offense." Cal. Civ.Code § 52(a). Both the Ninth Circuit and the California Supreme Court have held that the

minimum statutory damages may be awarded regardless of the actual damages sustained by the plaintiff. *Koire v. Metro Car Wash*, 40 Cal.3d 24, 33, 219 Cal.Rptr. 133, 707 P.2d 195 (1985) ("Section 52 provides for minimum statutory damages of [$4000] for every violation of section 51, *regardless* of the plaintiffs actual damages.") (emphasis in original); *Botosan v. Paul McNally Realty*, 216 F.3d 827, 835 (9th Cir.2000) ("[P]roof of actual damages is not a prerequisite to recovery of statutory minimum damages.")

#### b. The Disabled Persons Act

The DPA provides that "[i]ndividuals with disabilities or medical conditions have the same right as the general public to the full and free use of the streets, highways, sidewalks, walkways, public buildings, medical facilities, including hospitals, clinics, and physicians offices, public facilities, and other public places." Cal. Civ.Code § 54(a). It further provides that "[i]ndividuals with, disabilities shall be entitled to full and equal access ... to accommodations, advantages, facilities ... places of public accommodation, amusement, or resort, and other places to which the general public is invited...." Cal. Civ.Code § 54.1(a)(1). As with the Unruh Act, the DPA allows for a plaintiff to establish a violation of the DPA by a showing of an ADA violation. *See* Cal. Civ.Code § § 54(c), 54.1(d). A showing of intent is not required to obtain damages under the DPA. *Donald v. Café Royale, Inc.*, 218 Cal.App.3d 168, 177-80, 266 Cal.Rptr. 804 (1990).

Similarly, damages in the amount of three times the actual damages, but no less than one thousand dollars ($1000), are awarded "for each offense." Cal. Civ.Code § 54.3. As with the Unruh Act, a plaintiff need not prove actual damages in order to recover the minimum statutory amount; he instead must establish that he was denied equal access on the particular occasion. *Donald*, 218 Cal.App.3d at 180-81, 183, 266 Cal.Rptr. 804. A plaintiff may not recover under both the DPA and the Unruh Act.[3]

> FN3. "A person may not be held liable for damages pursuant to both this section and Section 52 for the same act or failure to act." Cal. Civ.Code § 54.3(c).

#### c. California Health & Safety Code § 19955 et seq.

*3 The purpose of section 19955 "is to insure that

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 3952249 (C.D.Cal.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 3

public accommodations or facilities constructed in this state with private funds adhere to the provisions of ... the Government Code." Cal. Health & Safety Code 19955. Access guidelines with which public accommodations must comply are detailed in Title 24 of the California Code of Regulations. *D'Lil v. Stardust Vacation Club,* 2001 WL 1825832, at *7 (E.D.Cal. Dec.21, 2001). Damages are not awarded independent of the DPA. *Donald,* 218 Cal.App.3d at 182-83, 266 Cal.Rptr. 804.

### 3. *Despite Plaintiffs' Stipulation Limiting Damages The Case Presents Novel and Complex Issues with Regard to Remedial Means of State Law*

In *Molski v. Hitching Post Rest. 1,* supra, a case involving the same claims presented here, Judge Wilson held that the state claims presented novel and complex issues of law since there was ambiguity created by the remedial provisions of the Unruh Act and the DPA. *(See* Wilson Order at 15:10-26). The phrases awarding damages "for each and every offense" in the Unruh Act and "for each offense" in the DPA are ambiguous. In fact, in cases interpreting those statutes, district courts have come to different conclusions concerning their meaning. *Compare Botsonan v. Fitzhugh,* 13 F.Supp.2d 1047 (S.D.Cal.1998) (permitting recovery of daily damages) *with Doran v. Embassy Suites Hotel,* 2002 WL 1968166, at *4-6 (N.D.Cal. Aug.26, 2002) (fording that daily damages are not permitted). In addition, no California cases are on-point. Thus, Judge Wilson found that "the damages provisions of the Unruh Act and DPA raise complex issues of unsettled state law which are better left to the California courts to resolve." (Judge Wilson's Order at 15:22-26).

Plaintiffs attempt to avoid the issue by voluntarily limiting their damages to their second [Unruh] and fourth [DPA] causes of action to a single statutory violation award amount of $4,000 to plaintiff Jarek Molski and a single statutory violation award amount of $1,000 to plaintiff [DREES]." It is unclear that this stipulation restricts the Court's need and/or ability to interpret the provisions in order to determine damages. Although the stipulation may allow the Court to avoid interpreting the statute to determine the meaning of "for each and every" or "for each" claim, it does not eliminate all questions of statutory interpretation. Because a plaintiff may recover under either the Unruh Act or the DPA, but not both, the stipulation directs the Court to award Molski either the minimum statutory amount for one

violation of the Unruh Act, or alternatively, to award him $1,000 for four offenses under the DPA. Such a decision would still require the Court to interpret the remedial language of the provisions. *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) ("Needless decisions of state law should be avoided as a matter of comity."). Thus, any damage award will necessarily require the Court to construe the remedial language without definitive guidance from the state courts.

### 3. *State Law Claims Substantially Predominate*

*4 The Court also concludes that the state claims predominate "in terms of proof, of the scope of the issues raised, [and] of the comprehensiveness of the remedy sought...." *Id.* Although *Gibbs* was decided prior to the creation of 28 U.S.C. § 1367, the Ninth Circuit has indicated that the case informs the courts in determining whether to exercise supplemental jurisdiction. *Acri v. Varian Assocs., Inc.,* 114 F.3d 999, 1001 (9th Cir.1997) (stating that "while discretion to decline to exercise supplemental jurisdiction over state law claims is triggered by the presence of one of the conditions in § 1367, it is informed by the *Gibbs* values of `economy, convenience, fairness, and comity." ').

While Plaintiff has pleaded a federal claim as a jurisdictional hook to maintain the action in federal court, the case centers on Plaintiffs claim for damages-which are recoverable only under the state law claims. The complaint reflects this fact. In his complaint, Molski listed ten violations, threatening more upon further discovery. Even though Plaintiffs have submitted a notice of voluntary limitation of damages, seeking only an award of $4,000 to Molski and $1,000 to DREES, it is still clear that the claim for damages is the predominant focus of this lawsuit. As noted by Judge Rafeedie in *Mandarin Touch* all but one of the claims stated in this case are state claims. *Mandarin Touch,* 359 F.Supp. at 937. Further, since the state law claims provide for injunctive relief, the federal claim adds nothing to the lawsuit that could not be obtained in Superior Court. Accordingly, Plaintiffs' state claims substantially predominate over the federal ADA claim.

### 4. *Exceptional Circumstances Exist*

Judge Wilson's Order also contained a final reason for declining jurisdiction-the catchall provision of .§. 1367(c). Although Defendants do not argue that the

Not Reported in F.Supp.2d                                                                 Page 4
Not Reported in F.Supp.2d, 2005 WL 3952249 (C.D.Cal.)
**(Cite as: Not Reported in F.Supp.2d)**

state claims should be dismissed pursuant to <u>section 1367(c)C4)</u>, the Court finds the most compelling reason for dismissal exists under this exception. <u>Section 1367(c)(4)</u> allows a district court to use its discretion to decline to exercise supplemental jurisdiction if "in exceptional circumstances, there are other compelling reasons for declining jurisdiction." <u>29 U.S.C. ——1367(c)(4).</u> A court may raise this issue sua sponte. *See <u>Gov't Employees Ins. Co. v. Dizol,</u>* <u>133 F.3d 1220, 1224 (9th Cir.1998)</u> (finding that a district court *must not* sua sponte address supplemental jurisdiction) (emphasis added); <u>*Executive Software,*</u> <u>24 F.3d at 1548</u> (a district court may sua sponte ask the parties to address supplemental jurisdiction).

Molski's background as a vexatious litigant weighs heavily against him in this motion. He has developed a well-oiled system: Molski files a complaint in which he always complains of lack of van-accessible parking, trouble entering the door, too-high service counters, and difficulty in the restroom. Once he files the complaint, he asks for injunctive relief and damages, and waits for settlement. "Of the hundreds of cases Molski has filed in this district, not one has ever been litigated on the merits ... Molski's m.o. is clear: sue, settle, and move on to the next suit." <u>*Molski v. Mandarin Touch Rest.,*</u> <u>347 F.Supp.2d 860, 866 (C.D.Cal.2004).</u> His intentions are not to obtain injunctive relief, since he could do so by merely filing suit under the ADA. Nor does the ADA claim serve as the only means of seeking injunctive relief; the state claims allow for such relief, as well. Molski instead attaches the ADA claim to his state claims for damages so he can get into the federal system, which he then uses to his advantage

*5 As the Defendant in *Hitching Post Rest I.* argued, Molski attaches the ADA claim as a means of forum-shopping. (Wilson Order at 18:7). As his defendants are typically small business owners whose premises are some distance from the Los Angeles metropolitan area, bringing suit in federal court in downtown Los Angeles compels them to settle rather than incur the attorneys fees and costs that would be associated with a federal court trial. Discouraging forum-shopping is a legitimate goal for the federal court. *See, e.g.,* <u>*Hanna v. Plumer,*</u> <u>380 U.S. 460 467-68, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965);</u> *Dizol,* 133 F.3d 1225 n. 5. Thus, when a plaintiff consistently attaches a federal claim to a suit for damages merely to get his case into federal court, "a court must weigh heavily considerations of comity before proceeding to adjudicate the state claim." (Judge Wilson's Order at 18:27-19:2).

Since it is apparent from Molski's track record that his federal claim is the least important of his causes of action, comity dictates that this Court consider his forum shopping tactics in determining whether to exercise its discretion to dismiss the supplemental claims.
IT IS SO ORDERED.

C.D.Cal.,2005.
Molski v. EOS Estate Winery
Not Reported in F.Supp.2d, 2005  WL 3952249 (C.D.Cal.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT C

Westlaw

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 5517235 (C.D.Cal.)
(Cite as: **Not Reported in F.Supp.2d**)

**H**
Jankey v. Beach Hut
C.D.Cal.,2005.
Only the Westlaw citation is currently available.
United States District Court,C.D. California.
Les JANKEY, an individual; and **Disability Rights,
Enforcement, Education,** Services: Helping You
Help Others, a California public benefit corporation,
Plaintiffs,
v.
BEACH HUT; Hermosa Courtyard LLC, a limited
liability company; Victor Romero and Angela
Romero, a married partnership dba Beach Hut,
Defendants.
**No. CV 05-3856 SVW (JTLx).**

Dec. 8, 2005.

Jennifer Lesley Steneberg, Thomas E. Frankovich,
Thomas E. Frankovich Law Offices, San Francisco,
CA, for Plaintiffs.
Kurt L. Schmalz, Lawrence Jennings Imel, Lurie
Zepeda Schmalz and Hogan, Beverly Hills, CA, for
Defendants.

ORDER GRANTING DEFENDANTS' MOTION
TO DISMISS
STEPHEN V. WILSON, United States District
Judge.

**I. INTRODUCTION**

*1 Plaintiffs Les Jankey and Disability Rights,
Enforcement, Education Services ("DREES") allege
that Defendants Beach Hut, Hermosa Courtyard
LLC, and Victor and Angela Romero (collectively,
"Defendants") violated Jankey's rights under the
Americans with Disabilities Act ("ADA"), 42 U.S.C.
12181 *et seq.,* Sections 54, 54.1 and 54.3 of the
California Civil Code (the "Disabled Persons Act" or
"DPA"), Section 19955 of the California Health and
Safety Code and the Unruh Civil Rights Act.

Defendants moved to dismiss (1) the state causes of
action as ill-suited to supplemental jurisdiction; and
(2) Plaintiff DREES for lack of standing.

As further discussed below, the Court GRANTS the
motion on both grounds.

**II. FACTS** [*]

FN1. These facts are taken from the
complaint.

Jankey is disabled and confined to a wheelchair. On
or about January 31, 2005, Jankey visited the Beach
Hut, a restaurant in Hermosa Beach. A raised
concrete pad prevented Jankey's easy access to the
Beach Hut. Jankey used his wheelchair to jump the
concrete pad, sustaining injuries. The concrete pad
was equivalent to a 6-inch curb. After eating at the
Beach Hut, Jankey entered the men's bathroom but
was unable to use it because the bathroom lacked
handrails and the toilet was low. Upon leaving,
Jankey again navigated the concrete pad, suffering
more stress and pain. On or about February 2, 2005,
Jankey revisited the Beach Hut and a replay of the
January 31 visit ensued.

DREES is a non-profit organization with a mission of
helping disabled people. Jankey is a member of
DREES.

Jankey and DREES are seeking (1) injunctive relief
and attorneys' fees and costs under the ADA; (2)
injunctive relief, statutory damages, punitive
damages, costs, prejudgment interest, and general and
compensatory damages under the DPA; (3) injunctive
relief, attorneys' fees and costs, prejudgment interest,
and general and compensatory damages under
Section 19955 of the California Health and Safety
Code; and (4) statutory damages, attorneys' fees and
costs, punitive damages, and prejudgment interest
under the Unruh Civil Rights Act.

**III. DISCUSSION**

Defendants raise two issues in their motion to
dismiss: (1) whether the Court should exercise
supplemental jurisdiction over Plaintiffs' state claims;
and (2) whether Plaintiff DREES has standing.

*A. Supplemental Jurisdiction*

The issue before the Court is whether it should
exercise its discretion and decline supplemental

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 5517235 (C.D.Cal.)
(Cite as: Not Reported in F.Supp.2d)

Page 2

jurisdiction over Jankey's state law claims. Defendants argue that (1) the three state claims predominate over the federal ADA claim; (2) the state claims raise novel issues of state law; and (3) Plaintiffs are forum shopping. In response, Plaintiffs cite _United Mine Workers v. Gibbs,_ 383 U.S. 715 (1966), and contend that the state law claims are based on the same nucleus of operative facts and therefore judicial economy recommends that they all be heard together. Plaintiffs also argue that their main goal is injunctive relief; not monetary damages.

*2 Title 28 U.S.C. § 1367 governs a federal court's exercise of supplemental jurisdiction. Section 1367(a) provides that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Under § 1367(c), however, a district court has the discretion to decline to exercise supplemental jurisdiction over state claim if

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. 5 1367(c)(1)-(4). As interpreted by the Ninth Circuit, § 1367 mandates the exercise of supplemental jurisdiction pursuant to § 1367(a), unless such exercise is prohibited by § 1367(b) or one of the specifically enumerated exceptions set forth in § 1367(c) applies. _Executive Software N. Am., Inc. v. US. Dist. Court for the Cent. Dist. of Cal.,_ 24 F.3d 1545, 1555-56 (9th Cir.1994). Thus, "unless a court properly invokes a § 1367(c) category in exercising its discretion to decline to entertain pendent claims, supplemental jurisdiction must be asserted." _Id._ at 1556.

Defendants argue that three of the exceptions set forth in § 1367(c) apply here. First, the Defendants argue that Jankey's claims under the Unruh Act and the DPA raise novel or complex unsettled issues of state law. Second, Defendants argue that Plaintiffs' state law claims for damages "substantially predominate" over the ADA claim for injunctive relief. Third, Defendants appear to argue that there

are "other compelling reasons" for declining to exercise supplemental jurisdiction. To determine the validity of these arguments, it is necessary to briefly review the ADA, the Unruh Act, and the DPA.

### 1. The ADA

Jankey's ADA claim arises under Title III of the ADA. Title III prohibits discrimination "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). A "restaurant, bar, or other establishment serving food or drink" is included within the definition of a "public accommodation" under Title III. 42 U.S.C. § 12181(7)(B).

The only remedy available to a private litigant under Title III is injunctive relief. 42 U.S.C. § 12188(a); [1] _see also Wander v. Kaus,_ 304 F.3d 856, 858 (9th Cir.2002) ("Damages are not recoverable under Title III of the ADA-only injunctive relief is available for violations of Title III."); _Fischer v. SJB-P.D. Inc.,_ 214 F.3d 1115, 1120 (9th Cir.2000) ("Monetary relief is not an option for private individuals under Title III of the ADA.").

> FN2. Section 12188(a)(1) provides that the remedies available under Title III are those set forth in 42 U.S.C. § 2000a-3(a). 42 U.S.C. 12188(a)(1). Section 2000a-3 (a) provides:
> Whenever any person has engaged or there are reasonable grounds to believe that any person is about to engage in any act or practice prohibited by section 2000a-2 of this title, a civil action for preventative relief, including an application for a permanent or temporary injunction, restraining order, or other order, may be instituted by the person aggrieved....
> 42 U.S.C. § 2000a-3. The Supreme Court has held that a plaintiff suing under § 2000a-3(a) cannot recover damages. _Newman v. Piggie Park Enters.,_ 390 U.S. 400, 401-02 (1968).

### 2. The Unruh Act

*3 The Unruh Act provides that "[a]ll persons within

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 5517235 (C.D.Cal.)
**(Cite as: Not Reported in F.Supp.2d)**

the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, or medical condition are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Cal. Civ.Code § 51(b). In 1992 the Unruh Act was amended to provide that "[a] violation of the right of any individual under the Americans with Disabilities Act of 1990 (Public Law 101-336) shall also constitute a violation of this section." Cal. Civ.Code § 51(f).

The Unruh Act authorizes an award of statutory damages in an amount three times the amount of actual damages but in no case less than four thousand dollars ($4,000) "for' each and every offense." Cal. Civ.Code § 52(a). The California Supreme Court has held that California Civil Code § 52 authorizes an award of the minimum statutory damages amount regardless of the plaintiffs actual damages. *Koire v. Metro Car Wash,*40 Cal.3d 24, 33 (1985). The Ninth Circuit has also reached this conclusion. *Botosan v. Paul McNally Realty,* 216 F.3d 827, 835 (9th Cir.2000) (holding that proof of actual damages is not a prerequisite to recovery of statutory minimum damages under California Civil Code § 52).

### 3. The DPA

The DPA provides that "[i]ndividuals with disabilities or medical conditions have the same right as the general public to the full and free use of the streets, highways, sidewalks, walkways, public buildings, medical facilities, including hospitals, clinics, and physician's offices, public facilities, and other public places." Cal. Civ.Code § 54(a). It further provides that "[i]ndividuals with disabilities shall be entitled to full and equal access ... to accommodations, advantages, facilities ... places of public accommodation, amusement, or resort, and other places to which the general public is invited...." Cal. Civ.Code § 54.1(a)(1). Like the Unruh Act, the DPA provides that "[a] violation of the right of an individual under the Americans with Disabilities Act of 1990 (Public Law 101-336) also constitutes a violation of this section." Cal. Civ.Code § 54(c); *see also* Cal. Civ.Code § 54.1(d) ("A violation of the right of an individual under the Americans with Disabilities Act of 1990 (Public Law 101-336) also constitutes a violation of this section, and nothing in this section shall be construed to limit the access of any person in violation of that act.").

The DPA authorizes an award of damages in an amount three times the amount of actual damages but in no case less than one thousand dollars ($1,000) "for each offense." Cal. Civ.Code § 54.3. A plaintiff need not show actual damages in order to recover the minimum amount. *Donald v. Cafe Royale, Inc.,*218 Cal.App.3d 168, 180-81 (1990). However, a plaintiff must establish that she was denied equal access on the particular occasion in order to recover. *Id.*at 183. Finally, the DPA prevents a plaintiff from recovering under both the DPA and the Unruh Act. California Civil Code § 54.3(c) provides that "[a] person may not be held liable for damages pursuant to both this section and Section 52 for the same act or failure to act." Cal. Civ.Code § 54.3(c).

### 4. **California Health & Safety Code § § 19955** *et seq.*

**\*4** California Health & Safe Code § 19956 mandates that all public accommodations constructed ' in California comply with the requirements of Government Code § 4450 *et seq.* Cal. Health & Safety Code § 19956; *see also People ex rel. Deukmejian v. CHE, Inc.,*150 Cal.App.3d 123, 132 (1984); *Schonfeld v. City of Carlsbad,*978 F.Supp. 1329, 1331 n. 2 (S.D.Cal.1997). The purpose of § 19956 is "to insure that public accommodations or private facilities constructed in this state with private funds adhere to the provisions [of Government Code § § 4450 *et seq.]."* Cal. Health & Safety Code § 19955. However, § 19956 applies to existing public accommodations constructed before July 1, 1970 only "when any alterations, structural repairs, or additions are to made...." Cal. Health & Safety Code § 19959. Moreover, even when alterations, structural repairs, or additions are made, § 19956 applies only to the "area of specific alteration, structural repair or addition and shall not be construed to mean that the entire building or facility is subject to this chapter." *Id.*

A plaintiff may not recover damages pursuant to 19956. *Donald,*218 Cal.App.3d at 182-83.

### 5. Analysis

*Novel Issue of State Law.* The remedial provisions of the Unruh Act and the DPA are not crystal clear. The phrases "for each and every offense" and "for each offense" are ambiguous. Indeed, two district courts which have grappled with this language have come to opposing conclusions. In *Botosan v. Fitzhugh,*13

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 5517235 (C.D.Cal.)
(Cite as: Not Reported in F.Supp.2d)

F.Supp.2d 1047, 1051-52 (S.D.Cal.1998), the court held that the phrases "for each and every offense" and "for each offense" authorize an award of daily damages for each day the plaintiff is deterred from visiting the defendant's facility (i.e., an award of $1,000 or $4,000 per day from the date of the plaintiffs initial visit until the date the facility is brought into compliance). By contrast, the court in *Doran v. Embassy Suites Hotel,* 2002 WL 1968166, at *4-6 (N.D.Cal. Aug. 26, 2002), found that daily damages are not available under the Unruh Act and the DPA. There is, unfortunately, no California state court case resolving the conflict between these two cases. This Court and three other courts in the Central District have previously found the meaning of this language to be sufficiently unsettled as to merit declining supplemental jurisdiction. *See Molski v. Mandarin Touch Restaurant* and *Jankey v. Yang Chow Restaurant Pasadena,* 359 F.Supp.2d 924, 936-37 (C.D.Cal.2005); *Molski v. LDS Estate Winery,* No. CV 03-5880 GAF (C.D. Cal. entered July 15, 2005); *Jankey v. Poop Deck,* No. CV 04-9741 RSWL (AJWx) (C.D. Cal. entered July 25, 2005); *Molski v. Hitching Post I Rest., Inc.,* No. CV 04-1077 SVW (RNBx) (C.D. Cal. entered May 25, 2005).

Because of the absence of controlling California case law, and because the two federal courts which have addressed the issue have come to opposing conclusions, the Court finds that the damages provisions of the Unruh Act and DPA raise complex issues of unsettled state law which are better left to the California courts to resolve.

***5 State Law Claims "Substantially Predominate" Over Federal Law Claims.** Defendants argue that Plaintiffs' state law claims for damages "substantially predominate" over the ADA claim for injunctive relief. While Defendants do not elaborate this point, it can be inferred that Defendants are concerned that if the statutory damages award were calculated at $4,000 per day, the dollar amount would be staggering for a small business like the Beach Hut (the violation allegedly began in January 2005, so even a conservative counting of the days from then until final resolution would achieve damages of over $1 million). Additionally, trying the state claims could, as a practical matter, consume more of the Court's time and resources than trying the federal claim.

In *United Mine Workers' v. Gibbs,* 383 U.S. 715, 726 (1966), the Supreme Court indicated that state issues may substantially predominate "in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought...." While *Gibbs* is a pre-28 U.S.C. 1367 case, the Ninth Circuit has indicated that the § 1367(c) inquiry should be informed by *Gibbs. Acri v. Varian Assocs., Inc.,* 114 F.3d 999, 1001 (9th Cir.1997).

Judged in terms of the *Gibbs* criteria, Plaintiffs' state law claims substantially predominate over the ADA claim. Although the burdens of proof and standards of liability under the ADA and the Unruh Act are identical where the plaintiff predicates his Unruh Act claim on an ADA violation, the statutory damages available to the plaintiff under the Unruh Act substantially predominate over the relief available under the ADA. Under the per violation standard, Jankey can recover a minimum of $4,000 per violation. By contrast, Jankey is entitled to only injunctive relief and attorneys' fees under the ADA. Given this disproportion, the Court concludes that Jankey's state claims substantially predominate over his federal ones. *Cf. Rivera Flores' v. P.R. Tel. Co.,* 776 F.Supp. 61, 71-72 (D.P.R.1991) (declining to exercise supplemental jurisdiction over plaintiffs non-federal claims because, among other things, the plaintiff was seeking six million dollars in damages for the tort of intentional infliction of emotional distress but only injunctive relief and backpay under the Rehabilitation Act). Moreover, the Court finds that interpreting the phrases "for each and every offense" and "for each offense" in the Unruh Act and the DPA would likely consume far more of the Court's time and resources than a trial on the merits of Jankey's ADA claim alone. For this reason, too, Jankey's state claims substantially predominate over his ADA claim.

***Economy, Convenience, Fairness, and Comity.** As noted above, the Ninth Circuit has indicated that the 1367(c) inquiry should be "informed by the *Gibbs* values of economy, convenience, fairness, and comity." *Acri,* 114 F.3d at 1001. Thus, these are among the "other compelling reasons" for which a court may decline to exercise supplemental jurisdiction.

*6 In this case, Defendants argue that discouraging forum-shopping is a compelling reason for declining to exercise supplemental jurisdiction. While this Court has previously found that another plaintiff, Jarek Molski, impermissibly engaged in forum shopping by bringing suits in federal court, the claim in this case is weaker. Jankey is a serial ADA plaintiff, but not to the same extent as Molski. A finding of forum shopping, however, is unnecessary

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 5517235 (C.D.Cal.)
(Cite as: Not Reported in F.Supp.2d)

for the Court to decline to exercise supplemental jurisdiction.

Plaintiffs urge that judicial economy counsels against declining supplemental jurisdiction. While it is true that the causes of action all arise out of the same basic facts, the predominance of the state law issues and the unsettled state law issues outweigh the concern regarding economy.

> FN3. At the November 14, 2005 hearing on this matter, Plaintiffs' counsel complained that when plaintiffs file similar cases in state court, the defendants remove the cases to federal court, and plaintiffs are then subjected to motions like this one. While the Court is sympathetic to Plaintiffs' complaint about being bounced between courts, the Court is nonetheless convinced that the state claims predominate and are novel enough that the state courts are the best decision-making body for the claims. The Court also notes that the relief available to plaintiffs under the federal ADA and the state statutes is identical. While plaintiffs are certainly free to plead ADA violations as well as state law violations, in order to avoid having their state cases removed to federal court, Plaintiffs might consider not attaching the extraneous ADA cause of action when litigating in state court.

Comity is an important tenet in the federal system and weighs even more heavily when the laws at issue have not been defmitively interpreted by the state courts. *Cf. Kazor v. Gen. Motors Corp.,585 F.Supp. 621, 623 (E.D.Mich.1984)* (finding that remand was warranted where no federal claims remained because remand is "particularly helpful in procuring a more definitive reading of state law where, as here, there is not a substantial amount of [state] authority interpreting the applicable provisions of [the].state statute"). In such circumstances, there are compelling reasons for declining jurisdiction. As the Court in *Gibbs* recognized, "[n]eedless decisions of state law should be avoided both as a matter of comity and *to promote justice between the parties, by procuring for them a surer footed reading of applicable law." Gibbs,383 U.S. at 726* (emphasis added).

Because the California courts should be given an opportunity to interpret whether the phrases "for each and every offense" and "for each offense," and because the parties themselves are entitled to a surer-footed interpretation of California's disability laws, compelling reasons exist to decline supplemental jurisdiction over Plaintiffs' state law claims.

## 2. *DREES' Standing*

DREES is an organization representing the interests of disabled people and Jankey is a member of DREES. An organization may have standing to bring suit on behalf of its members if (1) its members would otherwise have standing to sue in their own right, (2) the interests it seeks to protect are germane to the organization's purpose, and (3) the participation of individual members in the lawsuit is not required. *Hunt v. Washington Apple Advertising Comm'n,432 U.S. 333, 343 (1977).* The first two requirements for organizational standing are constitutional; the third is prudential. *Or. Advocacy Ctr v. Mink,322 F.3d 1101, 1109 (2003).* Because the Court is dismissing the state claims, the only remaining claim is for injunctive relief under the ADA. Jankey is a member of DREES and Defendants have not made a motion regarding Jankey's standing; [FN4] making restaurants ADA-compliant is within DREES's purpose; and it is unnecessary for an injured individual to participate in a suit for injunctive relief. Therefore, DREES appears to meet the basic requirements for organizational standing.

> FN4. Defendants argue that DREES lacks standing because there is a question of Jankey's standing. However, Defendants do not argue that Jankey should be dismissed for lack of standing, so this argument fails.

*7 However, Defendants point to a prudential standing doctrine and argue that DREES should be dismissed because Jankey is a better litigant than DREES for Jankey's claims. As another court in the Central District has remarked when faced with the question of prudential standing of DREES, "the individual plaintiff is in the best position to litigate his own claims," *Molski v. Kahn Winery, 381 F.Supp.2d 1209, 1210 (C.D.Cal.2005); see also Allen v. Wright,468 U.S. 737, 751 (1984)* ("general prohibition on a litigant's raising another person's legal rights"); *Gladstone, Realtors v. Village of Bellwood,441 U.S. 91, 100 (1979)* ("Even when a case falls within these constitutional boundaries, a plaintiff may still lack standing under the prudential principles by which the judiciary seeks ... to limit access to the federal courts to those litigants best suited to assert a particular claim"). Here, Jankey, the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 5517235 (C.D.Cal.)
**(Cite as: Not Reported in F.Supp.2d)**

allegedly injured individual, is litigating his own claim and Jankey's and DREES's prayers for relief are identical.[FN5] Out of respect for the concerns underlying the standing doctrine and to ensure that the case is appropriately focused on the injuries asserted by Jankey, the Court finds that DREES should be dismissed as a Plaintiff pursuant to the prudential standing doctrine.

> FN5. Plaintiffs argue that DREES is in a position to request injunctive relief above and beyond that which Jankey may request- for example, seeking relief such as large print menus and braille signs for its members with visual impairments. As Defendants point out, however, DREES's only basis for standing in this lawsuit is through its member, Jankey. DREES cannot vindicate hypothetical injuries of other members by attaching itself to Jankey's suit. *See Allen v. Wright,* 468 U.S. 737, 751 (1984) (a litigant cannot raise another person's legal rights). Thus, Defendants are correct that DREES does not add anything to the case.

## M. CONCLUSION

Defendants' motion to dismiss the state law claims and to dismiss DREES as a Plaintiff is GRANTED in full.

IT SO ORDERED.

C.D.Cal.,2005.
Jankey v. Beach Hut
Not Reported in F.Supp.2d, 2005   WL 5517235 (C.D.Cal.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.