1  THOMAS E. FRANKOVICH (State Bar No. 074414)
   JENNIFER L. STENEBERG (State Bar No. 202985)
2  THOMAS E. FRANKOVICH,
   *A Professional Law Corporation*
3  2806 Van Ness Avenue
   San Francisco, CA 94109
4  Telephone:    415/674-8600
   Facsimile:    415/674-9900
5
   Attorneys for Plaintiffs PATRICK CONNALLY
6  and DISABILITY RIGHTS ENFORCEMENT,
   EDUCATION SERVICES
7

8               UNITED STATES DISTRICT COURT

9               NORTHERN DISTRICT OF CALIFORNIA

10 PATRICK CONNALLY, an individual; and ) **CASE NO. C 07-3032-BZ**
   DISABILITY RIGHTS ENFORCEMENT,     )
11 EDUCATION, SERVICES: HELPING       ) **MEMORANDUM OF POINTS AND**
   YOU HELP OTHERS, a California public ) **AUTHORITIES IN OPPOSITION TO**
12 benefit corporation,                ) **DEFENDANT'S MOTION TO DISMISS**
                                       )
13         Plaintiffs,                 ) **Date:      October 31, 2007**
                                       ) **Time:      10:00 a.m.**
14 v.                                  ) **Judge:     Hon. Bernard Zimmerman**
                                       ) **Court:     # G, 15th Floor**
15 BAYPORT MARINA PLAZA LLC, a         ) **450 Golden Gate Ave.**
   limited liability company,          ) **San Francisco, California**
16                                     )
                                       )
17         Defendants.                 )
   _____)
18
          Plaintiffs, by and through their counsel of record, submit this memorandum of points and
19
   authorities in opposition to defendant's Motion to Dismiss their Second, Third and Fourth
20
   Causes of Action on supplemental jurisdictional grounds.
21
   ///
22
   ///
23
   ///
24
   //
25
   ///
26
   ///
27
   ///
28

# **TABLE OF CONTENTS**

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

I.  The Court Should Exercise Supplemental Jurisdiction Over Plaintiffs' State
    Law Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    A.  Declination Of Supplemental Jurisdiction For Plaintiffs' State Law
        Damage Claims Would Be Inconsistent With 28 U.S.C. § 1367(c) . . . . . . . . . . . 5

    B.  An Exercise Of The Court's Supplement Jurisdiction Is Supported By
        The Principles Of Judicial Economy, Convenience, Fairness To The
        Parties And Comity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

# TABLE OF AUTHORITIES

**Cases**

**U.S. Supreme Court**

Carnegie-Mellon Univ. v. Cohill,
    484 U.S. 343 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

Mine Workers v. Gibbs,
    383 U.S. 715 (1966) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 5, 6

**Ninth Circuit and California Federal**

Acri v. Varian Assocs.,
    114 F.3d 999 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Chavez v. Suzuki,
    2005 U.S. Dist. LEXIS 40092 (S.D. Cal. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Executive Software N. Am., Inc. v. United States Dist. Court,
    24 F.3d 1545 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

Johnson v. Barlow,
    2007 U.S. Dist. LEXIS 44855 (E.D. Cal. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Molski v. Mandarin Touch Restaurant,
    347 F.Supp.2d 860 (C.D. Cal. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Wander v. Kraus,
    304 F.3d 856 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Yates v. Belli Deli,
    2007 U.S. Dist. LEXIS 61431 (N.D. Cal. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

**Statutes**

28 U.S.C. § 1367 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 8

Cal. Civ. Code § 51(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
Cal. Civ. Code § 54(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
Cal. Civ. Code § 54.1(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
Cal. Civ. Code § 55 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

# INTRODUCTION

Plaintiffs' action, like all of the actions brought before this Court by plaintiffs and their counsel, seeks remediation of serious violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq*, as well as California laws intended to protect and promote the rights of persons with disabilities. The action is brought for the primary purpose of compelling access to the Bayport Marina Plaza for all persons with disabilities, including plaintiff Patrick Connally and the members of Disability Rights Enforcement, Education Services ("DREES"). Contrary to allegations by defendants, plaintiffs' actions are not brought for an improper purpose, nor are plaintiffs' access claims overshadowed by their State law claims for damages or attorneys' fees. Plaintiffs' actions, as this Court well knows from its past experiences with plaintiffs and their counsel, clearly do not comport with the defaming characterizations put forth by defendant.

The ADA and its companion California civil rights statutes were enacted to ensure that persons with disabilities are afforded access to places of public accommodation. In the absence of voluntary compliance, these laws rely on private enforcement to realize their purpose and to compel non-compliant businesses like the Bayport Marina Plaza to remove architectural barriers to access by the disabled public. To encourage and foster this private enforcement, Congress and the California Legislature included provisions which, in addition to achieving a significant public benefit, provide an economic incentive for plaintiffs and attorneys to take on this vital enforcement role. Plaintiffs' action here, like those filed against other similarly non-compliant businesses, is in full keeping with the spirit of the law. Contrary to the opinions expressed by the defendants, plaintiffs' actions in no way controvert the will of Congress or the California Legislature. If anything, these actions evidence that the statutorily provided incentives are achieving their aim--they are resulting in private enforcement of the law and disability access to numerous places of public accommodation which would otherwise remain inaccessible. Rather than reward defendant's gamesmanship herein, the Court should retain its jurisdiction to hear and decide plaintiffs' claims and deny defendant's motion.

///

**STATEMENT OF FACTS**

Plaintiff Patrick Connally is a person with a disability. Mr. Connally suffers from a severe form of arthritis which significantly impairs his ability to walk. He also experienced a traumatic head-injury as a younger man the long-term effects of which include blurred vision. While Mr. Connally is able to stand for short periods of time and take a few steps, to do so causes him considerable pain and discomfort. He also cannot drive a motor vehicle due to his vision problems. His arthritis condition requires that he regularly use a wheelchair for mobility. Plaintiff Disability Rights Enforcement Education Services: Helping You Help Others ("DREES") is a non-profit membership organization which promotes and advocates disability rights education and enforcement throughout California. DREES joins Mr. Connally in bringing this action on behalf of its membership.

Mr. Connally and DREES have been plaintiffs in a number of disability access suits, and neither denies being an activist plaintiff. Mr. Connally and DREES are both committed to seeing that the promise of the ADA is fully realized in our community, and they pursue that realization through legal enforcement of the Act. In this capacity, Mr. Connally and DREES were plaintiffs in the matter of *Connally v. North Beach Pizza*, San Francisco Superior Court, Case No. CGC-06-452129. Defendant's counsel herein, John Campo of Branson, Brinkop, Griffith & Strong, LLP., was also counsel for one of the defendants in the *Connally v. North Beach Pizza* matter. During the pendency of that matter, the parties participated in a mediation which defendant's counsel offered to host at his offices in the Bayport Marina Plaza.

Plaintiffs would point out that defendant's counsel is an experienced disability access defense attorney, having represented defendants in several cases against plaintiff's counsel. He is, presumably, familiar with the technical requirements of the Americans with Disabilities Act Accessibility Guidelines ("ADAAG") and/or Title 24 of the California Code of Regulations and their application to places of public accommodation. He was well aware of Mr. Connally's specific disability at the time of the mediation, and one would presume, especially in light of the his familiarity with Mr. Connally's litigation history, that he would have assessed the

accessibility of his office complex before offering to host the parties' mediation. Apparently, such a presumption was made in error.

On March 20, 2007, Mr. Connally and his driver, Ben Kinney, arrived at the Bayport Marina Plaza to attend the mediation in the *Connally v. North Beach Pizza* matter. Upon arriving at the office, Mr. Connally discovered that there was an insufficient number of disabled parking spaces and that there was no parking space which was van accessible. Of the disabled parking spaces which did exist, two of them had the passenger access aisle located in a vehicular traffic lane, one of them had the passenger access aisle located on the wrong side of the space, and one of them did not have a passenger access aisle at all. There was also no identified accessible path of travel from one of the disabled parking spaces to the entrance of the office building. Inside the building, Mr. Connally further discovered that the buildings restrooms were inaccessible. The designated disabled toilet stall within the men's restroom was too small, not providing sufficient clear space in front of the toilet for Mr. Connally to pull into the stall in his wheelchair and close the door behind him.

## ARGUMENT

**I. The Court Should Exercise Supplemental Jurisdiction Over Plaintiffs' State Law Claims**

The modern doctrine of supplemental jurisdiction was ushered in with the U.S. Supreme Court's decision in Mine Workers v. Gibbs, 383 U.S. 715 (1966). Gibbs set the standard for determining whether a federal court has jurisdiction over a state-law claim that is raised in an action which also puts forth a federal question. The Gibbs court held that a federal court has jurisdiction over an entire action, including state-law claims, whenever the federal law claims and state law claims in the case "derive from a common nucleus of operative fact" and are "such that [a plaintiff] would ordinarily be expected to try them all in one judicial proceeding." Gibbs, 383 U.S. at 725.

The Gibbs standard was purposefully broad in its jurisdictional authority, intended to counter what the Court saw as the federal courts' "unnecessarily grudging" exercise of pendant jurisdiction. Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 349 (1988). Yet, while Gibbs

clarified the expansive reach of federal judicial power to hear and decide matters of state law, the decision of whether or not to exercise that power remains discretionary when certain conditions are present. 28 U.S.C. § 1367(c); Acri v. Varian Assocs., 114 F.3d 999, 100 (9th Cir. 1997). The supplemental jurisdiction statute, 28 U.S.C. § 1367, provides specific instances where a declination of the supplemental jurisdiction may be appropriate. 28 U.S.C. § 1367(c). These instances are where:

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. Id.

It should be made clear that where one of the above circumstances is present a Court is not compelled to relinquish its supplemental jurisdiction. Rather, in such a situation the Court simply has the discretion to relinquish jurisdiction, and such discretion should be guided by the general principles of judicial economy, convenience, fairness to the parties and comity. Executive Software N. Am., Inc. v. United States Dist. Court, 24 F.3d 1545, 1557-58 (9th Cir. 1994). Supplemental jurisdiction "is a doctrine of flexibility, designed to allow courts to deal with cases involving pendent claims in the manner that most sensibly accommodates a range of concerns and values," Carnegie-Mellon, 484 U.S. at 350, and "given the importance of these values [(economy, convenience, fairness and comity)] in our federal system, the proper administration of justice is far better served by a deliberative decision than by default." Acri, 114 F.3d at 1001.

In the present case, plaintiffs' complaint raises both a federal claim and several state law claims, all of which "derive from a common nucleus of operative fact." With the incorporation of the Americans with Disabilities Act ("ADA") into both the Unruh Civil Rights Act, Cal. Civ. Code § 51, and the California Disabled Persons Act, Cal. Civ. Code § 54 and 54.1, the elements of liability and plaintiffs' theory of recovery on their federal and state claims are almost exact

mirror images, requiring identical showings of proof at trial. It is relatively clear and undisputed that, were it not for the commingling of federal and state law causes of action, plaintiffs' claims would be tried in concert through one judicial proceeding.  Thus, the only questions which must be reviewed by this Court are (1) whether any of the instances set out in 28 U.S.C. § 1367(c) are present; and if so, then (2) whether or not the exercise of supplemental jurisdiction serves the interests of economy, convenience, fairness and comity.

### A. Declination Of Supplemental Jurisdiction For Plaintiffs' State Law Damage Claims Would Be Inconsistent With 28 U.S.C. § 1367(c)

Of the four instances set out on 28 U.S.C. § 1367(c), the third–where the district court has dismissed all claims over which it has original jurisdiction–is clearly not applicable in that plaintiffs continue to maintain their claims under the ADA.  Similarly, plaintiffs' do not believe there to be a circumstance present in this case of such an exceptional or extraordinary nature as to implicate the fourth enumerated instance[1].  Therefore, the Court need only look at the remaining two possible instances to determine whether it has the discretion to dismiss plaintiffs' state law claims–do these claims raise a novel or complex issue of State law or do they substantially predominate over plaintiffs' federal claim.

With regard to liability on plaintiffs' claims, the answer to this question is a resounding no.  In fact, if anything, the inextricable nature of plaintiffs' state and federal claims should be a factor considered by the Court with regard to its exercise of supplemental jurisdiction.  As the U.S. Supreme Court noted in Mine Workers v. Gibbs, 383 U.S. 715 (1966):

> There may . . . be situations in which the state claim is so closely tied to questions of federal policy that the argument for exercise of pendent jurisdiction is particularly strong. In the present case, for example, the allowable scope of the state claim implicates the federal doctrine of pre-emption; while this interrelationship does not create statutory federal question jurisdiction, its existence is relevant to the exercise of discretion. Id. at 727 (internal citation omitted).

---

[1] As noted by the Court in Executive Software, "by providing that an exercise of discretion under subsection 1367(c)(4) ought to be made only in 'exceptional circumstances' Congress has sounded a note of caution that the bases for declining jurisdiction should be extended beyond the circumstances identified in subsections (c)(1)-(3) only if the circumstances are *quite unusual*." Executive Software, 24 F.3d at 1558 (emphasis added).

In this case, plaintiffs' principle theory of recovery on their state law claims derives directly from defendants' alleged violation of the federal ADA. Both sections 51 and 54 of the California Civil Code incorporate the ADA into state law, making any violation of a persons rights under the ADA a violation of the Unruh Civil Rights Act and the California Disabled Persons Act. Cal. Civ. Code §§ 51(f), 54(c) and 54.1(d). Thus, in prosecuting their state law claims at trial, plaintiffs will necessarily call on the Court to apply and interpret the federal ADA to assess liability. While this reliance on federal law may not be enough to bestow the Court with independent subject matter jurisdiction, *see* Wander v. Kraus, 304 F.3d 856 (9th Cir. 2002), it is most certainly a factor weighing heavily in favor of this Court exercising and retaining its discretionary supplemental jurisdiction.

Pragmatically, the only significant difference between plaintiffs' state and federal claims is one of remedies. The federal ADA is limited in its available remedies to injunctive relief, whereas plaintiffs' state Unruh Act and Disabled Persons Act claims provide for damages[2]. As noted by the Court in Gibbs, alternate state and federal remedies to claims arising from "a common nucleus of operative fact" do not defeat the federal court's supplemental jurisdiction. Gibbs, 715 U.S. at 728 (noting in that case that the federal claim only provided for compensatory damages, while the plaintiff's state claims provided for both compensatory and punitive damages).

Nonetheless, relying on several cases from the Central District of California, all of which rise from the now infamous opinion by Judge Edward Rafeedie in the matter of Molski v. Mandarin Touch Restaurant, 347 F.Supp.2d 860 (C.D. Cal. 2004), defendant argues that this Court should relinquish its supplemental jurisdiction because plaintiffs' State claims allegedly raise novel issues of State law and predominate over their federal ADA claim. These same issues were recently raised on motion in another matter before this Court, Yates v. Belli Deli, 2007 U.S. Dist. LEXIS 61431 (N.D. Cal. 2007), wherein Judge William Alsup upheld supplemental jurisdiction. In Yates, Judge Alsup recognized the split in authority relative to

---

[2] The Disabled Persons Act also provides for injunctive relief pursuant to Cal. Civ. Code § 55.

damages under State law and the defendants' assertion of State claim predominance.  However, he found that "none of these arguments wins the day."  Instead, he found that the plaintiffs' "claims clearly involve the same facts," and he held that "it would be inefficient to try the claims separately, so the exercise of supplemental jurisdiction is appropriate."  Id. at *21.

Similarly, in Chavez v. Suzuki, 2005 U.S. Dist. LEXIS 40092 (S.D. Cal. 2005), the Court noted:

> Although the Unruh Act and DPA [(Disabled Persons Act)] claims may implicate issues that remain to be resolved under state law–most notably, how to determine "each offense" for purposes of damages–the Court does not find that these issues are of such complexity or centrality that the Court must surrender jurisdiction.  Furthermore, the mere fact that the state claims allow for the recovery of monetary damages, whereas the ADA provides for injunctive relief only, does not compel the conclusion that the state claims "substantially predominate" over the federal claim.  Other than the availability of statutory damages under state law, the state and federal claims are identical.  The burdens of proof and standards of liability are the same.  Indeed, the Unruh Act and DPA specifically provide that a violation under the ADA also constitutes a violation of the Unrug Act and DPA.  Id. at *5-6.

Likewise, in the matter of Johnson v. Barlow, 2007 U.S. Dist. LEXIS 44855 (E.D. Cal. 2007), Judge William B. Shubb affirmed the propriety of exercising supplemental jurisdiction in a case with facts similar to those presented here.  In addressing the defendant's predominance assertion in Johnson, Judge Shubb astutely noted that, "plaintiff's state law claims for damages are undoubtedly a driving force behind the action.  But to rule as defendants propose would effectively preclude a district court from ever asserting supplemental jurisdiction over a state law claim under the Unruh Act."  Id. at *13.

Admittedly, plaintiffs' claim for damages may raise legal questions for the Court.  Nevertheless, these legal issues are neither novel nor complex.  While defendant and some Courts have tried to make much of the split between the Districts in interpreting the "each and every offense" language of the State statutes, the question is, for the most part, a simple matter of statutory construction.  Furthermore, from a pragmatic stand point it is at most a minor legal consideration in the overall context of plaintiffs' action.  Frankly, plaintiffs are primarily concerned with identification and removal of architectural barriers to access, and statutory damages is a somewhat lesser concern in the scope of these proceedings. Plaintiffs' damage

claims certainly do not predominate over their federal and state injunctive relief concerns. Given that plaintiffs' state law damage claims do not raise any novel or complex issues of law, nor do these claims predominate over plaintiffs federal claim, a declination of supplement jurisdiction in this case would be inconsistent with 28 U.S.C. § 1367(c).

### B. An Exercise Of The Court's Supplement Jurisdiction Is Supported By The Principles Of Judicial Economy, Convenience, Fairness To The Parties And Comity

Assuming arguendo that the Court were to determine that it is within its discretion to decline supplemental jurisdiction based on 28 U.S.C. § 1367(c), the principles of judicial economy, convenience, fairness to the parties and comity would overwhelmingly call for the court to retain rather than relinquish jurisdiction. The very purpose of supplemental jurisdiction is to avoid parties having to litigate multiple actions in differing venues for claims arising from a single "case or controversy." Yet, this is exactly what would occur if the Court were to decline jurisdiction over plaintiffs' State law claims. While plaintiffs' federal injunctive relief claim would continue in this Court, a second action would have to be filed and litigated in State court in order to resolve plaintiffs' State law claims. The parties would be forced to conduct two judicial proceedings instead of just one, incurring duplicative costs and fees, and burdening not just one Court but two with their action. The legal issues raised and the additional burden imposed on federal judicial resources, if any, if the Court retains jurisdiction pales in comparison to the expected time and expense that will be borne by the parties and the State court if this Court declines to retain jurisdiction. Thus, the only way to truly serve the interests of judicial economy is to retain jurisdiction.

Further, it is plaintiffs' experience and almost certainly the experience of the Court that once the injunctive relief aspects of plaintiffs' action are addressed and resolved, plaintiffs' monetary claims quickly follow suit. This Court, unlike its brethren District Courts, has adopted and implemented a remarkably effective procedure for disposition of ADA access cases–a procedure which has a near universal settlement rate. The effective and efficient manner in which this Court directs ADA litigation toward resolution promises, with a high rate of probability, that plaintiffs' claims will be resolved in their entirety quickly and with the least

1 | imposition on judicial resources.  Clearly, this would not be the case if supplemental jurisdiction
2 | is declined and/or relinquished.

## CONCLUSION

For the foregoing reasons, the Court should retain supplemental jurisdiction for plaintiffs' state law claims and defendant's motion to dismiss should be denied.

Dated: September 19, 2007

THOMAS E. FRANKOVICH
*A PROFESSIONAL LAW CORPORATION*

By: _____/s/_____
  Thomas E. Frankovich
Attorneys for Plaintiffs PATRICK CONNALLY
and DISABILITY RIGHTS ENFORCEMENT,
EDUCATION SERVICES