JOHN R. CAMPO, ESQ., SBN 157137
BRANSON, BRINKOP, GRIFFITH & STRONG, LLP
643 Bair Island Road, Suite 400
Redwood City, CA 94063
Telephone: (650) 365-7710
Facsimile:  (650) 365-7981

Attorneys for Defendant
**BAYPORT MARINA PLAZA LLC**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Patrick Connally, an individual; and DISABILITY RIGHTS ENFORCEMENT, EDUCATION, SERVICES: HELPING YOU HELP OTHERS, a California public benefit corporation,<br><br>Plaintiffs,<br><br>BAYPORT MARINA PLAZA LLC, a limited liability company,<br><br>Defendant. | Case No. C-07-3032-BZ<br><br>**REPLY IN SUPPORT OF MOTION TO DISMISS SECOND, THIRD AND FOURTH CAUSES OF ACTION PURSUANT TO FRCP 12(b)(1)**<br><br>Date:        October 17, 2007<br>Time:        10:00 a.m.<br>Courtroom:   G<br>Judge:       Bernard Zimmerman<br><br>[Complaint filed June 12, 2007] |

### I.   INTRODUCTION

This Motion to Dismiss has been brought at this early opportunity for one simple reason. Defendant seeks to dismiss Plaintiffs' state law causes of action because only the state law causes of action will be at issue between Plaintiffs and Defendant.

The only federal issue involved in this lawsuit is Plaintiffs' first cause of action seeking injunctive relief under the Americans With Disabilities Act ("ADA"). Defendant has repeatedly advised Plaintiffs' counsel in writing that the building was always believed to be in compliance, and that if it was not, those deficiencies would be corrected. In this regard, the building owners undertook to alter every bathroom in the building and to make other modifications to increase

1

REPLY IN SUPPORT OF MOTION TO DISMISS SECOND, THIRD AND FOURTH CAUSES OF ACTION PURSUANT TO FRCP 12(b)(1) – C-07-3032-BZ

handicap accessibility many years ago. This also included the addition of handicap stalls in the parking lot, coupled with a van accessible parking spot. Plaintiffs' lawsuit was the first occasion whereby it was suggested that these previous alterations may have been performed by Defendant's contractor, in error.

As a result, Defendant has advised Plaintiffs' counsel, even before answering this lawsuit, that any such issues were going to be reviewed and addressed. Since Defendant has already decided to make further improvements to the building to address the issues raised in Plaintiffs' Complaint, it seemed only fair to alert this Court of the fact that the federal injunctive relief will not be at issue in this case, and that only Plaintiffs' State Law Claims[1] will be disputed.

In considering the Plaintiffs' lawsuit, this Court should pay careful attention to the facts alleged in Plaintiffs' Complaint and in their Opposition. As this Court is well aware, Patrick Connally and his lawyer Thomas Frankovich are two of the most litigious individuals with regard to these types of claims. It is also undisputed that the only reason why Patrick Connally and Thomas Frankovich were present at our law firm, was to mediate an unrelated case filed by Patrick Connally and Thomas Frankovich. Notwithstanding the fact that Patrick Connally and Thomas Frankovich spent hours in this office building, the only deficiencies that are specified in Mr. Connally's Complaint is that the handicap accessible stall was not long enough (but it otherwise complied in every other aspect) and that a "van accessible" sign was missing from the van accessible parking spot in the parking lot. He also believes there should be more than three spots. Notably, Mr. Connally does not even allege that he was driving a van (he was not) nor that he was unable to park in any one of the three handicap accessible parking spots.

Accordingly, it is clear from the allegations of Plaintiffs' Complaint that the alleged deficiencies with Defendant's building are miniscule, and, as stated above, will be corrected to

---

[1] Plaintiffs' Second, Third and Fourth Causes of Action (collectively referred to as "State Law Claims").

2

REPLY IN SUPPORT OF MOTION TO DISMISS SECOND, THIRD AND FOURTH CAUSES OF ACTION PURSUANT TO FRCP 12(b)(1) – C-07-3032-BZ

ensure that they are in compliance. For these reasons, this Court should dismiss all of the State Law Claims, and leave Plaintiffs to litigate those claims in State Court, if he chooses.

## II. ARGUMENT

### A. Plaintiffs' State Law Claims Predominate Over The Federal ADA Claim And Seek Damages That Raise Unsettled Issues Of State Law

As stated in BAYPORT's moving papers, Plaintiffs' Complaint seeks "daily damages," alleging in pertinent part:

> Plaintiffs seek damages for violation of their civil rights on March 20, 2007 and they seek statutory damages of not less than $4000, pursuant to Civil Code §52 and $1000 pursuant to Civil Code §54.3, <u>for each day</u> after his visit that plaintiff PATRICK CONNALLY was deterred from returning to the BAYPORT MARINA PLAZA because of his knowledge and belief that the premises was and remains inaccessible to persons with disabilities.

*Complaint* at ¶30. (emphasis added)

Just days after BAYPORT filed its Motion to Dismiss, the Ninth Circuit Court of Appeals published its decision in *Molski v. Evergreen Dynasty Corp*, 2007 U.S. App. LEXIS 20966 ("*Evergreen*"), upholding what Plaintiffs described in their Opposition as "the now infamous opinion by Judge Edward Rafeedie in the matter of *Molski v. Mandarin Touch Restaurant*, 347 F.Supp.2d 860 (C.D. Cal. 2004)," and also upholding Judge Rafeedie's related decision in *Molski v. Mandarin Touch Restaurant* and *Jankey, et al. v. Yang Chow Restaurant Pasadena, et al.*, 359 F. Supp.2d 924 (C.D. Cal. 2005) ("*Molski/Jankey*").[2]

In *Evergreen*, the Ninth Circuit upheld Judge Rafeedie's determination that Molski (and by extension his counsel, Thomas Frankovich) harassed defendants into cash settlements. The Court upheld Judge Rafeedie's analysis of Molski's litigation strategy, reasoning in pertinent part:

---

[2] In all three decisions, Jarek Molski was represented by Thomas Frankovich.

3

REPLY IN SUPPORT OF MOTION TO DISMISS SECOND, THIRD AND FOURTH CAUSES OF ACTION PURSUANT TO FRCP 12(b)(1) – C-07-3032-BZ

California law provides that a plaintiff who suffers discrimination based on his or her disability may recover up to three times the amount of actual damages for each offense, and that, at a minimum, the plaintiff must recover damages of not less than $4000. Cal. Civ. Code § 52(a). Thus, Molski usually sought damages of not less than $ 4000 for each day that a facility did not comply with the ADA. Because Molski would often wait to file suit until a full year elapsed since his visit to the defendants' establishments, defendants often faced claims for statutory damages of over one million dollars. While Molski's claim for daily damages might have been legally justified, [5] it was not clearly erroneous for the district court to find that Molski's litigation strategy evidenced an intent to harass businesses into cash settlements. [6]

5. <u>District courts in our circuit disagree about whether a plaintiff may seek daily damages under California Civil Code sections 52(a) and 54.3(a)</u>. *Compare Rapazzini Winery*, 400 F. Supp. 2d at 1211 (holding that daily damages are not available under section 52(a)), *and Doran v. Embassy Suites Hotel*, No. C-02-1961, 2002 U.S. Dist. LEXIS 16116, 2002 WL 1968166, at *6 (N.D. Cal. Aug. 26, 2002) (holding that daily damages are not available under either section 52(a) or 54.3(a)), *with Botosan v. Fitzhugh*, 13 F. Supp. 2d 1047, 1051-52 (S.D. Cal. 1998) (holding that an allegation that a plaintiff "is being subjected to a discrimination" meant that the plaintiff had been deterred from visiting a public accommodation on a daily basis, and supported a claim for daily damages under sections 52(a) and 54.3(a)); *see also Arnold v. United Artists Theatre Circuit, Inc.*, 866 F. Supp. 433, 439 (N.D. Cal. 1994) (suggesting that a plaintiff can claim damages under sections 52(a) and 54.3(a) for each particular occasion of deterrence). We could not find any California court that has spoken on this issue.

6. We note that there was a substantial disconnect between the magnitude of injuries Molski suffered and the amount of damages he sought to recover. For example, in this case, in a declaration submitted to the district court, Molski admitted that the injury he suffered at Mandarin Touch--scraping his hand on the door frame--was "not a big injury." Nonetheless, Molski claimed damages of "not less than $4,000" for each of the 363 days that elapsed between when he visited Mandarin Touch on January 25, 2003, and when he filed his complaint on January 23, 2004. <u>Molski thus</u>

4

REPLY IN SUPPORT OF MOTION TO DISMISS SECOND, THIRD AND FOURTH CAUSES OF ACTION PURSUANT TO FRCP 12(b)(1) – C-07-3032-BZ

BRANSON BRINKOP GRIFFITH & STRONG LLP
643 BAIR ISLAND ROAD, SUITE 400
REDWOOD CITY, CALIFORNIA 94063
TELEPHONE (650) 365-7710

> made a damage claim of <u>no less than $ 1,452,000 on the day he filed his complaint, with that amount growing by the day</u>. Even if Molski could claim statutory minimum damages in an amount far greater than any actual injury he suffered, *see Continental Cablevision, Inc. v. Poll*, 124 F.3d 1044, 1049 (9th Cir. 1997) (suggesting that statutory damages do not require proof of injury); *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1306 (9th Cir. 1990) (same), Molski's claims of damages far in excess of the injuries he suffered are not entirely irrelevant to determining whether his litigation was vexatious.
>
> By seeking damages of *not less than* $4000 per day, Molski would claim actual damages beyond those to which he was arguably entitled under the California statutes. *See* Cal. Civ. Code §§ 52(a), 54.3(a) (permitting the recovery of actual damages). Also, there existed a possibility that the district court would reject the notion that Molski could recover daily damages, *see supra* note 5, and that Molski would be forced to seek, for the most part, actual damages. Additionally, Molski's complaints usually sought punitive damages. In all of those situations, to recover actual or punitive damages, Molski would need to prove a corresponding injury. *Cf. Continental Cablevision, Inc.*, 124 F.3d at 1049; *Six (6) Mexican Workers*, 904 F.2d at 1306. Because he claimed damages far in excess of his actual injuries, his exaggerated claims of damages support a pre-filing order to the extent that he sought to recover more than the statutory minimum of damages.

*Evergreen*, 2007 U.S. App. LEXIS 20966 at 30-34 (underline added)

In upholding Judge Rafeedie's determination that "Molski's litigation strategy evidenced an intent to <u>harass business into cash settlements</u>," the Ninth Circuit notes that it was through alleged daily damages that Molski was able to threaten damages of "no less than <u>$1,452,000</u>" on the day he filed his Complaint. *Id.* (emphasis added). More importantly, the *Evergreen* Court plainly states that the issue of whether statutory damages accrue on a daily basis is an <u>undecided issue of California state law</u>. *Id.*

Plaintiffs state in their Opposition that "from a pragmatic stand point [the issue of whether the statutory damages accrue on a daily basis] is at most a minor legal consideration in the overall context of Plaintiffs' action." However, Plaintiffs' State Law Claims seek potentially

REPLY IN SUPPORT OF MOTION TO DISMISS SECOND, THIRD AND FOURTH CAUSES OF ACTION PURSUANT TO FRCP 12(b)(1) – C-07-3032-BZ

huge statutory damages compensatory damages, and punitive damages pursuant to said State Law Claims.

Plaintiffs have employed the same litigation strategy against BAYPORT that the Ninth Circuit analyzed in *Evergreen*. Like the Plaintiffs in *Molski/Jankey*, Plaintiffs' Complaint seeks damages of "not less than $4,000" for each of the 180-plus days that have elapsed since the March 20, 2007 mediation that brought Plaintiff to BAYPORT. Notably, neither Plaintiff nor Mr. Frankovich bothered to mention the alleged problem in the bathroom, to provide BAYPORT with an opportunity to respond. Notably, neither Plaintiff nor Mr. Connally bothered to write to BAYPORT or Branson, Brinkop, Griffith & Strong to advise of their observations. Instead, Plaintiff waited until a settlement was reached in the unrelated action, and then filed this lawsuit over what is essentially one issue…the bathroom stall. By the time Plaintiffs finally served BAYPORT with the Complaint, on August 8, 2007, they allege no less than $550,000 in daily damages, with that amount growing by the day![3] Not only is the issue regarding daily damages an undecided issue of California state law, but Plaintiffs' alleged daily damages, along with Plaintiffs' rapidly increasing attorney fees, <u>provide the primary threatening thrust designed to harass BAYPORT into a cash settlement</u>. Because Plaintiffs' over-inflated State Law Claims involve unsettled issues of state law that predominate over the federal ADA claim, supplemental jurisdiction should be denied.

**B.   Plaintiffs' Request For Injunctive Relief Is Nominal And Unnecessary, Because BAYPORT Will Voluntarily Correct Any Deficiencies**

As stated in their Opposition, on March 20, 2007, Mr. Connally and Mr. Frankovich attended a mediation in the *Connally v. North Beach Pizza* matter at the Subject Property. In their Complaint, Plaintiffs allege related deficiencies regarding the number and signage of disabled parking stalls, and allege that the toilet stall in the men's restroom was too short for Mr.

---

[3] As of the filing of this Reply, Plaintiffs' alleged daily damages exceed $720,000.

6

REPLY IN SUPPORT OF MOTION TO DISMISS SECOND, THIRD AND FOURTH CAUSES OF ACTION PURSUANT TO FRCP 12(b)(1) – C-07-3032-BZ

Connally to pull into with his wheelchair. Notably, the stall was apparently wide enough, had proper grab bars, and was otherwise modified to provide handicap accessibility.

Plaintiffs' Opposition states that "one would presume [BAYPORT'S counsel] would have assessed the accessibility of his office complex before offering to host the parties' mediation." Unlike Plaintiffs' counsel, however, BAYPORT's counsel does not devote its entire practice to disability claims. Nonetheless, the Subject Property underwent renovations many years ago to address handicap accessibility. Because of these efforts, BAYPORT reasonably assumed that it was in compliance. Moreover, <u>after over seven hours</u> of mediation at the Subject Property, Mr. Connally (who according to his own Opposition is an activist Plaintiff) <u>only identifies a single item that allegedly affected his use of the premises, and another issue that didn't affect his use.</u>[4]

Plaintiffs strategically refused to disclose said alleged deficiencies until serving BAYPORT with their Complaint several months later, on August 8, 2007.[5] In response to the Complaint, and prior to filing its Answer and Motion to Dismiss, BAYPORT wrote an August 14, 2007 letter to Plaintiffs, attached hereto as Exhibit "A", indicating that any and all necessary modifications would be made in order to comply with the ADA, and requesting that Plaintiffs dismiss their action. BAYPORT has always maintained its desire and intention to <u>voluntarily comply</u> with the ADA, and has assured Plaintiffs that they will identify and remove any and all architectural barriers to access, thereby eliminating the need for the only remedy under the ADA.

This case exists only because Plaintiffs tenaciously seek daily statutory damages and attorney fees, based on the over-riding State Law Claims. Injunctive relief under the ADA is both <u>nominal and unnecessary</u>. Even accepting all the allegations of Plaintiffs' Complaint as true, modifications to correct any unintended ADA deficiencies would cost very little. At most,

---

[4] Plaintiffs' Complaint only identifies the bathroom stall, that was apparently too short for him to get to his wheelchair into. He was able to park, and did so, and used the remainder of the building.

[5] In fact, Plaintiffs waited nearly two months from the date that they e-filed the Complaint on June 12, 2007, prior to serving it on BAYPORT, thereby allowing more alleged daily damages to accumulate.

7

REPLY IN SUPPORT OF MOTION TO DISMISS SECOND, THIRD AND FOURTH CAUSES OF ACTION PURSUANT TO FRCP 12(b)(1) – C-07-3032-BZ

BRANSON BRINKOP GRIFFITH & STRONG LLP
643 BAIR ISLAND ROAD, SUITE 400
REDWOOD CITY, CALIFORNIA 94063
TELEPHONE (650) 365-7710

Plaintiffs' request for injunctive relief merely involves applying paint, posting signs, and lengthening a stall. As BAYPORT has always made it perfectly clear that it will voluntarily pay whatever nominal amount may be required in order to comply with the ADA, injunctive relief is unnecessary.

However, Plaintiffs are not concerned with whether or not they are granted injunctive relief. Plaintiffs' own Opposition states in pertinent part: "In addressing the defendant's predominance assertion in Johnson, Judge Shubb astutely noted that, 'plaintiff's state law claims for damages are undoubtedly a driving force behind the action.'" As such, Plaintiffs admit that the instant action is <u>undoubtedly driven</u> by the State Law Claims, as opposed to the ADA. It is beyond dispute that the State Law Claims <u>predominate</u> over the nominal ADA claim.

### C. This Court Should Deny Supplemental Jurisdiction Based On The Principles Of Judicial Economy, Convenience, Fairness To The Parties And Comity

Plaintiffs argue that denying Supplemental Jurisdiction would cause the parties to incur duplicative costs and burden two courts with this action. Plaintiffs further argue, "This Court, unlike its brethren District Courts, has adopted and implemented a remarkably effective procedure for disposition of ADA access cases – a procedure which has a near universal settlement rate." Unlike Plaintiffs, we will not presume to tell the Court which procedure it has or will adopt regarding this case. However, we find it ironic that Plaintiffs base their argument on judicial economy, when it is the predatory litigation tactics of "serial plaintiffs" represented by Mr. Frankovich that have flooded the courthouses with literally hundreds of frivolous ADA lawsuits.[6]

Plaintiffs attended a seven hour mediation on March 20, 2007, <u>yet not once during that time did they notify BAYPORT or its counsel that there were any perceived deficiencies</u>, purposefully refusing to do so before filing their Complaint several months later. In

---

[6] See *Molski/Jankey, supra,* 359 F.Supp.2d 924.

8

REPLY IN SUPPORT OF MOTION TO DISMISS SECOND, THIRD AND FOURTH CAUSES OF ACTION PURSUANT TO FRCP 12(b)(1) – C-07-3032-BZ

BAYPORT'S August 14, 2007 letter, BAYPORT stated that it would review and correct any potential deficiencies itemized in the Complaint, and that Plaintiffs had no need to seek injunctive relief under the ADA. Nevertheless, Plaintiffs refused to dismiss the action, either out of spite, or more than likely, to coerce a lucrative cash settlement.

Had Plaintiffs simply told BAYPORT, on March 20, 2007, that there were perceived deficiencies at the Subject Property, BAYPORT would have done exactly what it has agreed to do in this action… review and correct the stated architectural barriers… <u>voluntarily.</u> This suit was unnecessary. It was brought solely to extort money, and this Court should not condone counsel's tactics, under the circumstances of this case.

### III.   CONCLUSION

Were it not for the State Law Claims, enabling Plaintiffs to threaten thousands of dollars of damages, <u>Plaintiffs would not be litigating this case</u>. As such, the State Law Claims predominate over the nominal and unnecessary ADA Claim, which only affords injunctive relief. Plaintiffs should not be allowed to litigate their overblown State Law Claims for attorney fees and daily damages in this Court. As such, this Court should grant BAYPORT'S 12(b)(1) Motion and dismiss the State Law Claims for lack of subject matter jurisdiction, pursuant to 28 U.S.C. §1367 (c)(1),(2), and (4).

Dated: October 1, 2007

Respectfully submitted,

BRANSON, BRINKOP, GRIFFITH & STRONG

By:   /s/ *John Campo*
JOHN R. CAMPO
Attorneys for Above-Named Defendant

## PROOF OF SERVICE BY MAIL -- CCP 1013, 2015.5

I declare that: I am employed in the County of San Mateo, California. I am over the age of eighteen (18) and not a party to the within entitled cause; my business address is 643 Bair Island Road, Suite 400, Redwood City, California 94063.

On the date below, in the manner indicated, I caused the within document(s) entitled **REPLY IN SUPPORT OF MOTION TO DISMISS SECOND, THIRD AND FOURTH CAUSES OF ACTION PURSUANT TO FRCP 12(b)(1)** to be served on the party(s) or their attorney(s) of record in this action:

[X]   **Via Mail:** That I am readily familiar with our business practice for collection and processing of mail. On the same day that correspondence is placed for collection and mailing, it is deposited with the United States Postal Service that same day in the ordinary course of business, that the name and address of the person served as shown on the envelope, and the date and place of business where the correspondence is placed for deposit in the United States Postal Service and that the envelope was sealed and placed for collection and mailing on that date following ordinary business practices.

[ ]   Via Personal Service: I instructed each envelope to be hand-delivered via ____.

[ ]   Via Overnight Courier: I caused each envelope to be delivered via overnight mail by _____.

[ ]   Via Facsimile: I instructed such to be transmitted via facsimile to the office(s) of the addressee(s).

Addressed as follows:

Thomas E. Frankovich, Esq.
Jennifer L. Steneberg, Esq.
The Frankovich Group
2806 Van Ness Avenue
San Francisco, CA  94109
Telephone:  (415) 674-8600
Facsimile:   (415) 674-9900

I declare under penalty of perjury that the foregoing is true and correct, and that this declaration was executed on October 1, 2007 at Redwood City, California.

*Victoria Spanos* (signature)
Victoria Spanos

1

*EXHIBIT "A"*

BRANSON BRINKOP GRIFFITH & STRONG LLP

643 BAIR ISLAND ROAD, SUITE 400

REDWOOD CITY, CALIFORNIA 94063

THOMAS A. BRANSON*
DAVID L. STRONG
JOHN R. CAMPO†
RONALD W. MARBLESTONE
ALICIA M. GURRIES
BRIAN J. ROBERTS
FABIO F. FOTI
TINA M. BAIRD
THOMAS YEN
†ALSO ADMITTED IN ARIZONA
*INACTIVE

FRED R. BRINKOP
HARRY A. GRIFFITH
JOHN H. PODESTA**
ROBERT C. GOETSCH
ALBERT Z. GELIN
KENNETH W. SANDALL
JOYCE E. CLIFFORD
GEOFFREY HUTCHINSON

**ALSO ADMITTED IN NEVADA

TELEPHONE (650) 365-7710

FAX (650) 365-7981

WILLIAM R. RAPOPORT
JUDITH E. FRIEDERICI
OF COUNSEL

August 14, 2007

Thomas E. Frankovich, Esq.
The Frankovich Group
2806 Van Ness Avenue
San Francisco, CA 94109

Re: *Patrick Connally, et al. v. Bayport Marina Plaza, et al.*
United States District Court –Northern District Case No. C-07-3032-BZ

Dear Mr. Frankovich:

I am writing this letter on behalf of Bayport Marina Plaza, in response to your August 1, 2007 letter and enclosed Complaint. For the reasons set forth herein, I hereby request that you dismiss this action in its entirety.

The irony of this lawsuit is not lost on the undersigned. This office represented the Defendants in a lawsuit brought by Mr. Connally and your office entitled *Connally v. North Beach Pizza, et al.* Pursuant to all parties' agreement, the matter was submitted to mediation and we agreed to utilize a panelist from The San Francisco Bar Association.

The irony is that we could not conduct the mediation at your San Francisco law office, since, if my recollection is correct, neither your building (which you own) nor your law firm, is ADA accessible. In fact, I seem to recall that there is a sign on the outside of your building that essentially says as much. Since the mediation could not be held at your office, we volunteered the mediation at our office. It is rather ironic that a lawyer who makes his living suing everyone else for alleged non-compliance, owns a building that itself is not handicap accessible. The fact that you operate your law firm from that location is, ironic to say the least.

I have reviewed the allegations of your Complaint and can only conclude that your purpose in bringing this action is spiteful. Specifically, the mediation that was attended by your client in our office lasted over seven hours. The entire time that your client was in our office, he never once mentioned to our receptionist that there was any problem with the facilities. Furthermore,

BRANSON BRINKOP GRIFFITH & STRONG LLP

Thomas E. Frankovich, Esq.
Re: *Patrick Connally, et al. v. Bayport Marina Plaza, et al.*
August 14, 2007
Page 2

at no time did you bring any such alleged deficiencies to my attention, or to the mediator's attention to be communicated to me. If your client observed some alleged deficiency, you had seven hours to bring it to our attention.

As you are well aware, the bathrooms in this building are handicap accessible, and there are available restrooms on the second, third and fourth floors.

Furthermore, there are two "van accessible" handicap spots in the front of the building, with a clearly marked path to the front door.

It is the position of Bayport Marina Plaza that none of the alleged deficiencies identified in your Complaint at paragraph 21 (a.-f.) have any merit. Nonetheless, Bayport Marina Plaza is going to look at each of these specific issues and ensure that the building is compliant, as it has always believed it to be. If in fact any deficiency is found during its review, the item will be corrected.

In other words, any alleged deficiency which we observe will in fact be corrected. It was absolutely unnecessary for you to bring this action, let alone to bring this action without even dropping me a note advising of those issues that you believed to be deficient. It is quite clear that you have no desire to have people make corrections, and instead you only seek to inflate attorney fees for your own benefit.

Since my client has already undertaken to make its property handicap accessible, and since it has further agreed to review and correct any potential deficiencies itemized in your Complaint, you have no basis to seek injunctive relief, nor attorney fees.

Please dismiss this action forthwith. As I am sure you can well imagine, Bayport Marina Plaza will rely upon this letter to defeat any claim for attorney fees that you seek. I also find it ironic that in your August 1, 2007 letter directed to Fred Brinkop you advise that defense attorneys may embark upon a "billing" exercise, rather than attempt to settle the action. Notwithstanding the fact that I find your "advice" to be improper, I hope you take your own advice and dismiss this action forthwith.

Very truly yours,

John R. Campo

JRC/vls

cc: Fred R. Brinkop, Esq.